J. W. & R. H. Osgood *v* Lewis.—1829.

---

## J. W. & R. H. Osgood *vs.* Lewis.—June, 1829.

After verdict, the allegation of fraud and deceit in a declaration, is equivalent to the charge of an actual *scienter*.

In cases of express warranty, averments of fraud and deceit are immaterial.

Warranties on the sales of personal property have usually been divided into two classes, express and implied.

To create an express warranty, the word warrant need not be used, nor is any precise form of expression required; any affirmation of the quality or condition of the thing sold, (not uttered as matter of opinion, or belief,) made by the seller at the time of sale, for the purpose of assuring the buyer of the truth of the fact affirmed, and inducing him to make the purchase, if so received and relied on by the purchaser, is an express warranty.

In cases of oral contracts, it is the province of the jury to decide upon the existence of the ingredients necessary to constitute a warranty.

But in cases of written contracts, whether the instrument contain an express warranty or not, the court must determine.

Implied warranties arise by operation of law; they exist without any intention of the seller to create them, and may properly be divided into two kinds,

The one is untinctured by actual fraud or deceit, as the warranty of title, that provisions purchased for domestic use are wholesome—and in executory contracts, or where the purchaser had no opportunity of inspection, that the article contracted for shall be saleable as such in the market.

Other implied warranties are where fraud and deceit are of their very essence, as in cases where the seller of any article knowing of its unsoundness, uses any disguise or artifice to conceal it, or represents it, (whether in the way of expressing opinion, or belief, or otherwise,) to be exempt from such defect.

Implied warranties are not conclusions or inferences of fact drawn by a jury, but conclusions of law pronounced by the court absolutely, upon facts admitted or proved before the jury, or hypothetically, where the facts are controverted.

In actions on the case upon implied warranties, where the knowledge of the defendant is not an essential ingredient of the plaintiff's right of action, it need not be alleged nor proved.

The statement in a bill of parcels for a quantity of oil, that it was "winter pressed sperm oil," is an express warranty by the vendor, that such oil was winter pressed.

There is a distinction between oral and written contracts, that in the former much of the *colloquium* was never intended or understood by the parties to be essential component parts of the contract, while in the latter nothing is inserted which is immaterial, no fact stated which is not presumed to be relied upon by the parties; and for the truth of which the one does not bind himself to the other; upon this principle mere recitals in deeds have been held to be covenants.

APPEAL from *Baltimore* County Court. This was an action on the case brought on the 27th of March 1822, by the appellants, (the plaintiffs in that court,) against the appellee, (the defendant in the said court.) The declaration contained *four* counts. The *first count* stated, "that whereas the plaintiffs, copartners, trading under the firm of *Osgood* and *Company*, heretofore, to wit, on the 1st of December 1821, at *Baltimore* county aforesaid, at the special instance and request of the defendant, bargained with the defendant to buy of him a quantity of oil; that is to say, 115 casks, containing 9,547¾ gallons, at and for a certain price or sum of money, to wit, the sum of $10,780 93; and the defendant, by, then and there, falsely and fraudulently representing the said oil to be of the quality of the best winter pressed spermaceti oil, then and there sold and delivered the said oil to the plaintiffs at and for the sum of money aforesaid, which was then and there paid by the plaintiffs to the defendant, for the same; whereas in truth

and in fact the said oil was not the best winter pressed sperma-
ceti oil, as represented by the defendant, but of a greatly infe-
rior quality, which he, the defendant, well knew at the time of
the sale and delivery thereof as aforesaid; and the plaintiffs in
fact say, that the defendant, by means of the premises, on the
day and year aforesaid, at the county aforesaid, falsely and
fraudulently deceived them, the plaintiffs, on the sale of the
said oil, and thereby the said oil became of no use or value to
the plaintiffs, to wit, at *Baltimore* county aforesaid."

*Second count.* "And whereas also, the plaintiffs afterwards,
to wit, on the day and year last aforesaid, at *Baltimore* coun-
ty aforesaid, bargained with the defendant, to buy of him a
certain other quantity of oil, to wit, 115 casks, containing
9,547¾ gallons; and the defendant by, then and there, falsely
warranting the said last mentioned oil to be best winter pressed
spermaceti oil, falsely and fraudulently induced the plaintiffs
then and there to buy of him, the defendant, the said last men-
tioned oil, for a certain other large price or sum of money, to
wit, the sum of $10,780 93 of like current money; whereas,
in truth and in fact, the said last mentioned oil, at the time of
the said last mentioned warranty and sale, was not the best
winter pressed spermaceti oil, but was of a greatly inferior
quality, and of no use or value to the plaintiffs, to wit, at the
county aforesaid."

*Third count.* "And whereas also, the plaintiffs afterwards,
to wit, on the day and year last aforesaid, at *Baltimore* coun-
ty aforesaid, bargained with the defendant, to buy of him a
certain other quantity of oil, to wit, 115 casks, containing
9,547¾ gallons, and the defendant then and there falsely repre-
senting the said last mentioned oil to be winter pressed sper-
maceti oil, falsely and fraudulently induced the plaintiffs then
and there to buy of him, the defendant, the said last mention-
ed oil, for a certain other large sum of money, to wit, the sum
of $10,780 93, of like current money, then and there paid by
the plaintiffs to the defendant, for the same; whereas, in truth
and in fact, the said last mentioned oil, at the time of the said
last mentioned representation and sale, was not winter pressed
spermaceti oil, but of a greatly inferior quality, which he, the
defendant, well knew at the time of the last mentioned repre-

sentation and sale; and the plaintiffs in fact say, that the defenant, by means of the premises, on the day and year aforesaid, at the county aforesaid, falsely and fraudulently deceived them, the plaintiffs, on the sale of the said last mentioned oil, and thereby the said last mentioned oil became of no use or value to the plaintiffs, to wit, at *Baltimore* county aforesaid."

*Fourth count.* "And whereas also, the plaintiffs afterwards, to wit, on the day and year last aforesaid, at the county aforesaid, bargained with the defendant to buy of him a certain other quantity of oil, to wit, 115 casks, containing 9,547¾ gallons; and the defendant by, then and there, falsely warranting the said last mentioned oil to be winter pressed spermaceti oil, falsely and fraudulently induced the plaintiffs then and there. to buy of him, the defendant, the said last mentioned oil, for a certain other large sum of money, to wit, the sum of $10,780 93, of like current money; whereas, in truth and in fact, the said last mentioned oil, at the time of the said last mentioned warranty and sale, was not winter pressed spermaceti oil, but was of a greatly inferior quality, and of no use or value to the plaintiffs, to wit, at *Baltimore* county aforesaid. And so the plaintiffs say, that the defendant has falsely and fraudulently deceived them, the plaintiffs, on the sale of the said last mentioned oil as aforesaid, to wit, at the county aforesaid, to the damage of the plaintiffs in the sum of," &c. The defendant pleaded not guilty, and issue was joined.

1. At the trial the plaintiffs offered in evidence that they are merchants, residing in the city of *Baltimore*, and trading under the firm of *Osgood* and *Co.* and that they have been so residing in the said city of *Baltimore*, and carrying on trade and commerce, under the aforesaid name and style of *Osgood.* and *Co.* from the year 1820, continually up to this time; and that *Osgood* and *Co.* mentioned in the bill of parcels hereinafter inserted, as the purchasers of the oil mentioned in the said bills of parcels from the defendant in this case, and the plaintiffs in this case, are the same persons; and that the plaintiffs purchased the said oil from the defendant, and received the same, and the said bill of parcels, under the name and style of Messrs. *Osgood* and *Co.* And further proved that the de-

fendant sold to the plaintiffs in this cause a quantity of oil, as stated in the following bill of parcels:

"*Baltimore*, November 21st, 1821.

Messrs. *Osgood* and *Co.* Bo't. of *Peter Lewis*,

115 casks of Winter Prest Sperm Oil. Gages 29," &c.

"Gallons  9,547½

1,600  gs. a 115 cts.  $1,840

7,947½ a 112½ cts.  8,944 93

Received payment in full, by sundries, up to the 5th December 1821.  *Peter Lewis.*"

Which said oil was delivered between the twenty-first day of November, and the fifth day of December, inclusive, in the year 1821, on which latter day the defendant signed and delivered the bill of parcels, and receipt thereunder written, to the plaintiffs; and which were offered and read in evidence, the same having been proved to be in the handwriting of the defendant. That a part of said oil was immediately, upon the landing thereof from the defendant's vessel on the wharf, and after the delivery thereof to the plaintiffs, sold by them to different individuals in the city of *Baltimore*, and immediately taken from the wharf by such purchasers. That part thereof, to wit, about twenty barrels, were stored in the second floor of plaintiffs' warehouse in said city, a part on the first floor of that and the adjoining warehouse, a part in a brick stable belonging to the plaintiffs, situated in said city, and part thereof was sent by packet from the wharf, and before it was stored, consigned by the plaintiffs to a house in *Alexandria.* Part of the oil was sent from the wharf before being stored, to *Gregg* and *Co.* merchants, carrying on business in *Franklin-street*, in said city, and received and deposited by them in their cellar, to be by them retailed or sold for the plaintiffs. The plaintiffs further offered evidence that the oil, so sold and delivered to them by the defendant, at the time of said sale and delivery, was not winter pressed oil; and that the oil so sold and delivered by the plaintiffs to such persons, and by them taken immediately from the wharf, was carried by them to their respective houses and stores, and there deposited in suitable and judicious places, and carefully kept by them; that the said oil

proved to be oil of inferior quality, and not winter pressed oil. A large part of the oil sold to the plaintiffs, and by them stored, as well as the oil sent to *Alexandria*, proved to be of the like bad character and quality, and that a great part thereof was summer oil and of inferior quality; that the same congealed, and became unfit for use; that part of the oil shipped by them to *Alexandria* was returned by the consignee as not being winter pressed, and as being unfit for use; that persons in the habit of purchasing oil, refused to purchase of the plaintiffs, in consequence of which the principal part of the said oil remained unsold, and on the plaintiffs' hands. That upon discovering that the said oil was not winter pressed, but summer oil, and of inferior kind, the plaintiffs gave notice to the defendant, by the following letter, that the said oil was not winter pressed, and of the kind represented in the bill of parcels, and required the defendant to take the same back. "*Baltimore*, 22d Dec. 1821. Capt. *Peter Lewis*. Dr. Sir,—We have sold several casks of the oil bo't. of you, and warranted by you to us of the best kind winter press'd. sperm oil, the purchasers have complained of the quality, and pronounce it very bad. Their opinion has prevented our making sales, and will probably be a great injury to us—we shall hold you accountable for all damages for loss sustained by us in consequence of the bad reputation the oil has acquired, and from its bad quality—if the d'ft. for the balance of the acc. is not negotiable, you will not—

(Signed)                                    *Osgood* and *Co.*"

That the defendant admitted that he had sold 'the oil, as the best winter pressed oil, and that the said oil was not what he sold it for, (to which evidence the defendant objected, so far as it contradicted the bill of parcels,) and the plaintiffs ought to be made whole, but did not take back the same, or reimburse the plaintiffs. That a great part of said oil was congealed, and some of it as thick as lard or turpentine. That it so remained congealed through the month of March, a part until April, and a part of it remained congealed until the month of July 1822. The plaintiffs further offered evidence that winter pressed oil, is that oil which is pressed in cold and freezing weather, in the winter season, and that it will not congeal in ordi-

nary winters in the climate of the city of *Baltimore,* and although it will congeal, when exposed in an open place, to a great degree of cold, yet it will return to its original limpid state upon a change of the weather, and *its becoming more* moderate. The plaintiffs further offered evidence that oil which congealed entirely through when the thermometer was at 20 degrees, if kept in the same warehouse would resume its limpid state when the thermometer rose to 40, in the opinion of the witness, in ten days, and if it congealed at zero entirely through, upon the thermometer rising to forty-six, he believes it would resume its limpid state in ten days. The witness has not seen the experiment, but was brought up at *Nantucket;* has had a considerable opportunity of obtaining information of the character of oil, and the effect of the weather upon it; that summer oil is the oil prepared during warm weather; that it will congeal in any weather colder than that in which it was made; will not stand an ordinary winter in *Baltimore;* and is not then fit for use at that season of the year. That winter pressed spermaceti oil, as known and understood in the trade of the city of *Baltimore,* was spermaceti oil, that will remain limpid, during the ordinary winters, in the climate of the city of *Baltimore,* when kept in casks in a warehouse, or when kept in casks in a proper place; and that the word sperm, in the said bill of parcels, means the same thing, and is an abridgment of the word spermaceti; that the price, at the time of the sale herein before mentioned by the defendant to the plaintiffs, was, in the city of *Baltimore,* sixty-five cents per gallon, by the quantity for summer oil, and 120 cents per gallon for winter pressed, when sold by the single cask, and 125 cents for the latter, when sold by the gallon. That the plaintiffs employed, after the 26th of March, but in that month, 1822, a skilful person to take charge of, cooper, and keep in the best situation, such parts of said oil as had not been by them sold off as aforesaid, until some disposition thereof should be made, which was accordingly done, and the same kept in judicious and suitable places. That during the preceding winter, the same person coopered the casks, and kept them tight and in order. That such part of said oil, so placed, was, by direction of the plaintiffs, sold to the highest bidders at public

auction in the city of *Baltimore*, in the month of November, 1822, by one of the licensed auctioneers of the city of *Baltimore*, after due notice of said sale; that by the sale of said oil, the plaintiffs lost the sum of $4,270 09, and which with interest to the 10th November 1825, amounts to the sum of $5,236. That before the said sale at auction, the plaintiffs gave the following notice to *Henry Payson* and *Co.* merchants in the city of *Baltimore.* "*Baltimore,* 25th October, 1822. Messrs. *Henry Payson* and *Co.* Gent,—We hereby give you notice, that we shall on the 13th November next, sell the oil at auction, which was purchased by us last fall of Capt. *Peter Lewis,* and by him warranted to be of a quality, which it was not, and on account of which, we have instituted a suit against him. You are, therefore, as the agent of the said *Lewis,* or of his employers, hereby notified of this intended sale, to act as seems to you proper in this case.—

(Signed)                          *Osgood* and *Co.*"

And which notice was received by the said *Payson* and *Co.* on the day of its date, and was produced on the trial of this cause by the defendant, upon notice being given to him for that purpose by the plaintiffs. And also proved, that the contents of said notice was communicated to the defendant by the said *Payson* and *Co.* by letter, put in the post office in said city, on the same day. The plaintiffs further proved, that they were merchants, carrying on business in the city of *Baltimore,* but have never been in the habit of purchasing or selling oil, the cargo purchased of the defendant being their first purchase of that article in a large quantity, and were not judges of the article. That at the time they purchased the oil, and also, when the same was delivered on the wharf from the vessel, the whole of it was perfectly limpid, in which state, it was proved, that summer, fall, and winter oil, cannot be distinguished from each other by those in the habit of dealing in that article, and best acquainted with it; and offered evidence, that at the time of the sale and delivery of the oil aforesaid, the weather was mild. They further proved, there was no public inspection in the city of *Baltimore,* of oil, and that the defendant was a captain sailing between *Nantucket* and the city of *Baltimore,* and was in the habit of buying and selling

oil upon his own account; that he was not in the habit of deal-
ing with the plaintiffs, never having dealt with them except on
one occasion, when he purchased a quantity of flour, for which
he gave them his own promissory note; and no evidence was
offered that the defendant, at the time of the sale of said oil
and delivery thereof, did represent to the plaintiffs that he was
selling said oil as the agent of other persons, or that he dis-
closed the names of any person interested therein, if such there
were.    It was further given in evidence by the plaintiffs, that
the defendant represented that he had brought the said oil from
*Nantucket,* where the same was made, and at which place he
resides.    They further gave in evidence, by *Christian Mayer,*
that all three meteorological tables which were produced in
evidence by the defendant, up to the first of January 1822,
were kept in the country parts of the city of *Baltimore,* in
an elevated situation, about a mile and a half from *Bowley's*
wharf; that it is high, and exposed to the winds, sheltered to
the north-west by a woods, but exposed to the north-east, and
no houses are near to the said situation where the thermome-
ters were kept, and that it is ordinarily colder there in winter,
and warmer in summer, than in the settled parts of the city,
including *Bowley's* wharf; that in the opinion of the witness
such situation does not exceed two degrees of cold in the win-
ter over such settled parts; that the tables referred to were
taken from the thermometers, one situated on the south east
side of the house, one in a passage on the north-east, and the
other in the balcony on the north-east; that the thermometers
aforesaid were kept in the situation before described until the
end of the year 1821; and for the years 1822 and 1823, they
were kept in the settled parts of the city of *Baltimore;* that
witness is confident of the correctness of Mr. *Brantz,* who
kept the tables; that in the opinion of the witness, judging
from the tables, there was no ice in the basin from the twenty-
first day of November to the fifth day of December 1821, un-
less there might be a little on the edge of the basin; that ice
forms more readily at the same temperature late in the winter
season, than at the commencement of the season.    The plain-
tiffs further gave in evidence, that summer oil, when taken out
of the hold of a vessel, will not congeal in the course of a sin-

gle night, even at a low temperature of the atmosphere. And
further gave in evidence the following copy of a letter from
them to the defendant, proved to have been written by them,
and put into the post office in *Baltimore*, directed to him at
*Nantucket*—the defendant having received due notice to pro-
duce the original.

"*Baltimore*, 21st June, 1822.

Capt. *Peter Lewis*, Sir—The oil which we bought of you
on the 21st Nov. last, and warranted to be pure winter strain-
ed, being of different quality from what it was represented, as
you have long since been informed, and relative to which a
suit is now pending, is every day wasting, and for the interest
of all concerned, had better be sold.   As it will probably be
sacrificed if sold at auction, being an unusual way of selling
that article, we propose, that by consent of both parties,
and without prejudice to either, that it be put into the
hands of Messrs. *Payson & Co.* who are your friends, and
special bail in this case, for sale, and the nt. pds. to be paid
over to us.

Your ob't. serv'ts.

(Signed,)                    *Osgood & Co.*"

And also gave in evidence, that the oil so purchased from
the defendant, and delivered by him to the plaintiffs, was all
stored in proper and suitable places for winter pressed oil, dur-
ing all the time it was in their possession; and further, that
some of the said oil was good winter pressed oil, and continu-
ed limpid through the severest weather of the winter of 1821
and 1822, while stored in the warehouse of the plaintiffs, and
elsewhere, which warehouse was proved to be in good condi-
tion, unusually well built, and protected with shutters, and
was kept closed on the back of the first floor, and wholly clos-
ed in the second floor during the said winter.   And further
gave in evidence the following deposition of *Richard Lem-
mon*: "The deposition of *Richard Lemmon*, a witness pro-
duced, sworn and examined, on the part of the plaintiffs, and
agreed to be read in evidence in the above cause.   Deponent
is one of the firm of *Robert Lemmon* and *Company*, auc-
tioneers in the city of *Baltimore*, and was so in the months
of October and November.   In the year 1822 deponent was

applied to in one of said months by plaintiffs, to advertise for sale a quantity of oil, which had been partly stored in the old exchange, where the whole of it was sold, with the exception of two casks of summer strained oil, which was sold last. The advertisement was accordingly published in one of the *Baltimore* newspapers, which state that the said oil would be sold for account of whom it might concern; and deponent believes that a longer notice than usual was given of said intended sale. On the 13th of November in said year, the sale of said oil commenced at public auction. Deponent acted as cryer on the said day; fifty-one casks and barrels of said oil were sold at public auction; six casks of which were winter strained oil. On the same day, thirteen casks of winter strained oil were sold at private sale, which had been previously offered at public auction, but was not sold, because it would not bring a sufficient price; of the six casks of winter strained oil, which were sold at public auction as aforesaid, one cask brought seventy-seven cents per gallon, one seventy-six cents and an half per gallon, and the other four seventy-five cents per gallon. The thirteen casks which were sold at private sale as aforesaid, were sold at seventy-five cents per gallon, the sale of winter strained oil being stopped on that day, because it would not bring seventy-five cents per gallon. The sale of the said thirteen casks at private sale, was beneficial to the owners of said oil, because if the sale at public auction had been pushed, it would not have brought so good a price. On the 14th of November, in said year, seven casks of winter strained oil, were sold at private sale, for seventy-five cents per gallon. On the 18th of said month, two casks of said oil were sold at private sale, and on the 19th of said month, three casks of said oil were sold at private sale. On the 26th of said month the sales of said oil were closed, with two casks of summer strained oil. The particulars of the sale of said oil, as furnished by the firm of *Robert Lemmon* and *Co.* to the plaintiffs, in which the quantity sold, and the respective prices thereof, will appear by a reference to exhibit R. L. herewith filed; all the oil which was sold as winter strained oil, this deponent, by the orders of the plaintiffs, warranted as such to the purchasers. No warranty as to the balance of said oil, being winter strained, was

made, but the purchasers were left to judge for themselves; but deponent stated at the time of sale that some of it might have been strained in the fall, and some of it in the summer. It was in the first place announced by deponent as summer strained oil, but he was stopped by one of the plaintiffs who stated to him that a part of said oil might have been strained in the fall, and part in the summer, and desired deponent to sell the oil without warranty as to quality, but permit the purchasers to judge for themselves. Deponent made this representation to the purchasers, and the sales went on." [Here follows the exhibit R L referred to in the foregoing deposition.

The amount of sales   .    $3729 39
 Charges deducted        94 71
            ———
            $3634 68]

And proved by a cross examination of the defendant's witnesses, that all those who purchased the oil as aforesaid, under such auction sale, (which was not warranted winter pressed,) sold or retailed the same as summer oil; and that the cask bought by one *Butler*, at the said sale, proved to be very bad summer oil, and not fit for use. And further, that the oil bought for winter pressed, sold at retail from one dollar to one dollar and twenty-five cents per gallon, and that which was not warranted winter pressed, sold by retail from sixty-two cents to one dollar. And the plaintiffs further gave in evidence that winter pressed oil, sold by retail by the gallon, in the winter of 1821 and 1822, at one dollar and fifty cents per gallon. The plaintiffs further gave in evidence, that the defendant admitted that some of the oil which he had previously sold as aforesaid to the plaintiffs, nobody could pretend to call winter pressed oil, and that the plaintiffs ought to be made whole; and he further added, that he had been deceived himself in the quality of the said oil. And further gave in evidence, that the defendant admitted that the oil was not as good as he sold it for.

The defendant then gave in evidence, that before, and at the time of the sale of the said oil by the defendant to the plaintiffs, said oil was lying at *Bowley's* wharf, in the city of *Baltimore*, near to the warehouse of the plaintiffs, and that be-

tween the 21st of November 1821, and the 5th of December 1821, the same was landed on said wharf, and while so lying, was gauged by the city gaugers, they taking out the bungs of each cask and barrel, and inserting therein the gauging rod in each cask, for the purpose of ascertaining its contents; that while the said bungs were so out, and when the quantity of said oil was shipped as proved by the plaintiffs, to *Alexandria*, the clerks and agents of the plaintiffs saw the same, and that it was then limpid. The defendant further gave in evidence, the meteorological tables. He further gave in evidence, that what is termed summer oil, will, when the weather is at the freezing point, show itself by congealing, and even before the weather becomes so cold, that what is termed fall oil, will, in the same weather, also discover itself. He further gave in evidence, that all the said oil sold by the defendant to the plaintiffs, was winter pressed oil, and was pressed by the manufacturers at *Nantucket*, in the months of January and February 1821, during the most favourable weather for making the best winter pressed oil, and of the best stock of materials. He further gave in evidence, that all of the said oil was made at *Nantucket*, in *Massachusetts*, and was shipped from that port by the manufacturers and owners, on board the defendant's vessel, consigned by them to the defendant as their agent. The defendant further offered in evidence the depositions of sundry witnesses, for the purpose of proving that the defendant received the said oil from the shippers, as winter pressed, and under a representation of its being winter pressed. [The evidence here produced taken under commissions issued for that purpose, was very voluminous, and which it has been deemed unnecessary to insert.] The defendant further gave in evidence, that he made the said sale to the plaintiffs, for and on account of the shippers and owners at *Nantucket*, but made no statement to that effect to the plaintiffs, or informed them of any agency, or disclosed the names of his owners to them; and that he paid over the proceeds of the oil to the owners and shippers, as stated in the said depositions. The defendant further gave in evidence, that after the date of the said letter of the plaintiffs of the 22d day of December 1821, the plaintiffs retained the possession of the said oil, and from the time of the sale to

them, and as low down as the 9th of March 1822, the plaintiffs continued to sell the oil as their own, both by wholesale and retail; and sold in their own names, thirty-four casks of the said oil as winter pressed oil, and advertised the same for sale as winter pressed oil as late as the 6th of February 1822. The defendant further gave in evidence, that some part of the said oil was purchased by certain persons at the sale made by the auctioneer, as stated in the plaintiffs' evidence, as summer oil, and at the price of summer oil; and further gave in evidence, that this part of said oil remained limpid during the whole of the winter, and if it had been sold to them as winter oil, it would not have been complained of by the said purchasers; and further gave in evidence, that summer oil would not continue limpid during the winter, if exposed, as this was, by the said purchasers.    And the defendant offered evidence in order to shew that the said oil was winter pressed oil, that one cask sold at the said auction to *Groom*, who had for many years kept a grocery store on *Fell's Point*, sold to him as not winter pressed oil, and at a summer oil price; that he kept the said oil in his cellar, which was not deep, and had a northern exposure, and that it remained limpid during the winter, and that he never had better oil.    The defendant further gave in evidence, that the oil that is pressed in the winter months is called and known, and sold, as winter pressed oil, and that oil pressed during the winter, and when *Fahrenheit's* thermometer is below thirty degrees, is called and esteemed the best winter pressed oil; that winter pressed oil will congeal if exposed to weather colder than that in which it was pressed.    He further gave in evidence, that the places in which the plaintiffs kept this oil, were not safe and proper places to keep winter oil through the winter season, and that the congealing of such oil, in such places, in the winter, is no proof of its not being winter pressed oil, and that winter pressed oil, once congealed, will remain congealed until warm weather.    The defendant further gave in evidence, by the declarations of the defendant himself, as proved by the plaintiffs, and admitted by the plaintiffs to be evidence in this cause, that he, the defendant, had been deceived by his employers, the owners and manufacturers of said oil, and that he sold the said oil to the plaintiffs under

such misapprehension. The defendant further gave in evidence, that the price of winter pressed oil begun to decline in March 1822, and from the 19th of March 1822, the price of such oil, by retail, fell to one dollar, and then eighty-seven and a half cents. The defendant then prayed the opinion of the court, and their direction to the jury, that the plaintiffs cannot recover on the *fourth* count in their declaration, unless they shall prove a warranty on the part of the defendant, that the oil was winter pressed oil; and that in this case the description of the oil in the bill of parcels, does not amount to a warranty. Which opinion and direction the Court [*Hanson* and *Ward*, A. J. *Archer*, Ch. J. dissenting,] gave to the jury. The plaintiffs excepted.

2. The plaintiffs then prayed the opinion of the court, and their direction to the jury, that the statement in the bill of parcels herein before set forth, that the oil therein mentioned was winter pressed oil, was a warranty in law that the said oil, at the time of the sale and delivery thereof to the plaintiffs by the defendant, in the manner herein before stated, was winter pressed oil. Which opinion and direction, the Court (*Archer*, dissenting) refused to give; and the plaintiffs excepted.

3. The plaintiffs further prayed the opinion of the court, and their direction to the jury, that if the jury find from the evidence, that the oil mentioned in the bill of parcels, or a great part thereof, was not winter pressed oil at the time of the sale and delivery thereof by the defendant to the plaintiffs, as herein before stated, but was summer or fall oil, of inferior quality to winter pressed, and of less value, that then the plaintiffs are entitled to recover on the fourth count of the declaration filed in this case. Which opinion and direction the Court (*Archer* dissenting,) refused to give; and the plaintiffs excepted.

4. The plaintiffs further prayed the opinion of the court, and their direction to the jury, that if the jury find from the evidence, that at the time of the sale and delivery of the oil herein before mentioned, by the defendant to the plaintiffs, the defendant warranted the same to be winter pressed oil, and that the plaintiffs, relying on such warranty, purchased the

same; and if the jury also find, that at the time of the said warranty and sale, the said oil was not winter pressed oil, but was summer or fall oil, and of inferior quality, and less value than winter pressed oil, that then the plaintiffs are entitled to recover. Which opinion and direction, the Court (*Archer* dissenting) did give to the jury; but also were of opinion, and so directed the jury, that there was no evidence in the cause of a warranty, and that the plaintiffs are not entitled to recover, unless they find from the evidence, that the oil was not winter pressed oil, and that the defendant, at the time of the sale, knew that the oil was not winter pressed oil. The plaintiffs excepted; and the verdict and judgment being against them, they appealed to this court.

The cause was argued at June term 1827, before BUCHANAN, Ch. J. and EARLE, STEPHEN, and DORSEY, J.

*Williams*, (District Attorney of *U. S.*) for the Appellants, contended, 1. On the *first* and *second* bills of exceptions—That the statement in the bill of parcels that the oil therein mentioned was *winter pressed oil*, is a warranty in law, that the said oil, at the time of the sale and delivery thereof by the defendant to the plaintiffs, in the manner stated in the evidence, was winter pressed oil.

2. On the *fourth* bill of exceptions—That there was evidence of warranty that the oil in question was winter pressed oil. 1st. Because the bill of parcels contained such a warranty. 2d. Because if the bill of parcels did not *per se* import such a warranty, yet *that*, together with the declarations of the defendant, made at the time of the sale—the relation of the parties, and other circumstances, furnished evidence from which the jury might *infer* that there was such a warranty.

3. On the *third* bill of exceptions—That *case* is the proper form of action to recover for a loss sustained by a breach of such a warranty; and that the *fourth* count in the declaration is sufficient.

1. The whole question rests upon the *fourth* count in the declaration. A bill of parcels is a warranty, with certain exceptions, that the article therein mentioned is warranted to be of the quality described. 3 *Stark. Evid.* 1660, 1661, &c. *Peake's Evid.*

228. *Long on Sales,* 120, 124. *Pasley v Freeman,* 3 *T. R.* 53. *Jones v Bowden,* 4 *Taunt.* 847. *Laing v Fidgeon,* 6 *Taunt.* 108, (1 *Serg. & Low.* 327.) S. C. 4 *Campb.* 169. *Yates v Pym,* 6 *Taunt.* 446. (1 *Serg. & Low.* 416.) *Holcombe v Hewson,* 2 *Campb.* 391. *Tye v Finmore,* 3 *Campb.* 462. *Gardiner v Gray,* 4 *Campb.* 144, 145. *Bridge v Wain,* 1 *Stark. Rep.* 504, (2 *Serg. & Low.* 486.) *Shepherd v Kain,* 5 *Barn. & Ald.* 240, (7 *Serg. & Low.* 82.) *Defreeze v Trumper,* 1 *Johns. Rep.* 274. *Cramer v Bradshaw,* 10 *Johns. Rep.* 484. *Chapman v Murch,* 19 *Johns. Rep.* 290. *Roberts v Morgan,* 2 *Cowen's Rep.* 438. *Bradford v Manly,* 13 *Mass. Rep.* 139. A written bill of parcels cannot be varied, &c. by parol evidence. *Batturs v Sellers & Patterson,* 6 *Harr. & Johns.* 249. Here there is no ambiguity in the meaning, *winter pressed oil,* as stated in the bill of parcels. There can be no doubt as to whether it meant *winter* pressed oil or *summer* pressed oil. The defendant is to be considered in this transaction as principal, and he cannot shield himself under the suggestion of his having sold the oil in question as the agent of others. An agent may warrant so as to bind himself personally; and this the defendant has done in this case. 3 *Stark. Evid.* 1663. *Bradford v Manly,* 13 *Mass. Rep.* 143. *Jendwine v Slade,* 2 *Esp. Rep.* 572. *Baglehole v Walters,* 3 *Campb.* 154. *Pickering v Dowson,* 4 *Taunt.* 779. *Parkinson v Lee,* 2 *East,* 314. *Chapman v Murch,* 19 *Johns. Rep.* 290, (overruling *Seixas v Woods,* 2 *Caine's Rep.* 48.) 1 *Am. Quar. Review,* 121, by Mr. *Hopkinson,* a learned advocate of the *Pennsylvania* bar. *Snell, Stagg & Co. v Moses & Sons,* 1 *Johns. Rep.* 96. *Sands & Crump v Taylor & Lovett,* 5 *Johns. Rep.* 395. *Sweet v Colegate,* 20 *Johns. Rep.* 196.

2. Intention is always a matter of fact for the jury. 1 *Stark. Evid.* 428. 2 *Stark. Evid.* 741, 895. *Sugd.* 113. *Jones v Bowden,* 4 *Taunt.* 847. *Helyear v Hawke,* 5 *Esp. Rep.* 72. *Medina v Stoughton,* 1 *Salk.* 210. *Pasley v Freeman,* 3 *T. R.* 57. *Capp v Topham,* 6 *East,* 392. *Seixas v Woods,* 2 *Caine's Rep.* 48. *Jackson v Hull,* 10 *Johns. Rep.* 481. *Chapman v Murch,* 19 *Johns. Rep.* 290. *Sweet v Colgate,* 20 *Johns. Rep.* 196. *Etting v Bank of United States,* 11

*Wheat.* 59, 75. *Jolly's Adm'rs. v Baltimore Equitable Society, &c* 1 *Harr. & Gill,* 295.

3. The *fourth* count in the declaration is according to the form in 2 *Chitty's Plead.* 100, *(note,)* 277, 278. It is wholly immaterial whether it be an action on the case, or an action of *assumpsit.* 3 *Blk. Com.* 166.   2 *Com. Cont.* 263.   3 *Stark. Evid.* 1660. 1 *Com. Dig.* tit. *Action on the Case,* (A 11,) 237, 238. *Pasley v Freeman,* 3 *T. R.* 58. *Pickering v Dowson,* 4 *Taunt.* 779. *Jones v Bowden, Ib.* 847. *Williamson v Allison,* 2 *East,* 446. *Govett v Radnidge,* 3 *East,* 62. *Richards v Simonds,* 3 *Wils.* 40. *Shepherd v Kain,* 5 *Barn. & Ald.* 240, (7 *Serg. & Low.* 82.) *Seixas v Woods,* 2 *Caine's Rep.* 48. *Barney v Dewey,* 13 *Johns. Rep.* 224. 1 *Chitty's Plead.* 39, 138.   2 *Blk. Com.* 451.

*R. Johnson,* for the Appellee.   The facts collected from the uncontradicted evidence in the cause—are, that the oil in question was manufactured at *Nantucket,* was there shipped in the fall of the year 1821 on board of the defendant's vessel, *consigned* to himself by the manufacturers, carried by him to *Baltimore,* and there sold by him as winter pressed oil, under an honest belief that it was such, as given in evidence by the plaintiffs, and as found by the verdict of the jury.   That at the time of the sale, the oil was open to the inspection of the plaintiffs, and they, by their agents, did in fact superintend the gauging of it; and in making the sale the defendant acted only as the agent of the owners; and had no other opportunity of knowing the real condition of the oil, than the plaintiffs had, who purchased.   He made use of no artifice to prevent the plaintiffs from ascertaining the condition of the oil.   The sale was made on the 21st of November 1821, and the oil was delivered between that day and the 5th of December following, on which *last day* the bill of parcels was signed and delivered.   The evidence is, that the only difference between winter strained and other oil, is that the first is made in cold weather.   The *material* is the *same.*   The difference is only in the *quality* of the oil.   In its capacity to stand a greater degree of cold, than the fall or summer oil.   These, it is believed, are all the material facts which are necessary to be noticed in arguing the

questions of law. It has been admitted that the whole case turns upon the *fourth* count in the declaration. At the trial below *four* bills of exceptions were taken by the plaintiffs. The *first* question arises as well under the *second* and *third* bills of exceptions, as under the *first*; and it is—Is the description in the bill of parcels, that the oil therein mentioned was winter pressed oil, a warranty of itself? 2. Does not that description, taken in connexion with the other facts given in evidence—such as the admissions of the defendant—the relative situation of the parties, &c. furnish evidence from which the jury might *infer a warranty?* This question arises upon the *fourth* bill of exceptions. 3. Is an action on the case a proper remedy to recover damages for the breach of any other warranty, than an *express one,* unless the plaintiff *proves,* as well as *alleges,* that such warranty was *falsely and fraudulently made?* Can it in any *other way* be maintained on an *implied warranty?* The court below has not said that such an action cannot be sustained; on the contrary they directed the jury, in the *fourth* bill of exceptions, that if the defendant *knew* (to be found from the evidence,) the oil *not* to be winter pressed oil when he sold it, that then upon *the whole case,* the plaintiffs were entitled to recover.

1. As to the last question stated—can this action be maintained for the breach of any other than an express warranty, except by alleging and proving *knowledge* on the part of the defendant, and an intention to defraud, &c. 1 *Chitty's Plead.* 139. 2 *Chitty's Plead.* 100, *(note)* 276, 324, *(note.) Williamson v Allison,* 2 *East,* 446. 2 *Selw. N. P.* 580. *Bridge v Wain,* 2 *Serg. & Low.* 486.

2. Is the representation in the bill of parcels *itself* a warranty that the oil sold was winter pressed oil? The word warranty is not to be found in the bill of parcels, nor does it contain *express* words of promise that the oil was winter pressed oil. It contains nothing more than a *representation* of the thing sold—an *affirmation* of that character. The general rule is admitted to be, that at common law the maxim in the sale of property is *caveat emptor.* A sound price does not necessarily imply a sound article. *Co. Litt.* 102, b. 2 *Blk. Com.* 451. *Johnston v Cope,* 3 *Harr. & Johns.* 89. *Parkin*

*son v Lee*, 2 *East*, 314. 2 *Com. Cont.*.265, 267, 272. 1 *Fonbl.* 120, 121, *(note x.)* 2 *Fonbl.* 280, *(note h.)* This rule is entirely independent of an opportunity to inspect, or an *actual* inspection. In *Johnston v Cope*, 3 *Harr. & Johns.* 89, there was no opportunity to inspect—the linens were sold *in bales* unopened, and the price paid was the price of merchantable linens. There could, therefore, have been no doubt that the purchaser intended to buy, and the vendor to sell merchantable linens. So in *Williamson v Allison*, 2 *East*, 448, *(notes.)* *Gray v Cox*, 10 *Serg. & Low.* 283. It does not depend, therefore, on the belief or expectation of the parties. But the purchaser may guard against this maxim by taking a *warranty* from the seller; and the question here is, have the plaintiffs done so by taking the bill of parcels? Does the seller by that bill of parcels warrant the oil to be winter pressed oil? It may be, and is admitted that no particular *form of words* are necessary to make a warranty. The word *warranty* need not be used—any word of equivalent import is sufficient. The *price paid* is not sufficient, under the authorities cited, to authorise the inference that the parties intended a warranty; nor is the purpose for which the oil was to be used, and the understanding and usage of the trade in that particular, sufficient. That usage cannot control the general law. *Thompson v Ashton*, 14 *Johns. Rep.* 316. 1 *Selw. N. P.* 482. *Parkinson v Lee*, 2 *East*, 314. *Bridge v Wain*, 2 *Serg. & Low.* 486. There is nothing left upon the bill of parcels but the statement that the thing sold was winter pressed oil, and that statement being nothing more than an affirmation of the fact. Before this court can decide that it is a warranty, they must decide that an *affirmation* is in all cases a warranty, and is of itself, and considered by itself, equivalent to the word warranty. There is no distinction between a difference in the *thing*, or in its quality. 1 *Fonb*. 120, *(note x.)* Is then an affirmation *per se*, a warranty? 2 *Com. Cont.* 265. *Chandelor v Lopus*, *Cro. Jac.* 4. 1 *Selw. N. P.* 486. 2 *Com. Cont.* 265. *Co. Litt.* 102, *b.* 1 *Com. Dig.* 238. *Seixas v Woods*, 2 *Caine's Rep.* 48. *Swett v Colgate*, 20 *Johns. Rep* 203. *Pasley v Freeman*, 3 *T. R.* 53, per *Buller*, J. The intention to warrant is not to be inferred from the intention to *sell*, It depends upon

the intention with which the sale is made, and that intention is to be collected from the circumstances of the case, and to be proved by the plaintiff. *Jendwine v Slade*, 2 *Esp. Rep.* 572. *Chapman v Murch*, 19 *Johns. Rep.* 290. 2 *Com. Cont.* 272. 12 *Vin. Ab.* tit. *Evidence*, (6 E.) pl. 7. These cases show that the party did something more than *affirm* the fact. If it were otherwise an affirmation would in all cases be a *warranty*. 2 *Blk. Com.* 451. 3 *Blk. Com.* 166. *Am. Reg.* 122. There can be no *difference* in a representation of this sort in *parol*, and in *writing*. But the cases of *Tye v Finmore*, 3 *Campb.* 462, and *Gardiner v Gray*, 4 *Campb.* 145, have been much relied on by the learned counsel on the other side. Unless the last case is founded on the idea that the common law maxim of *caveat emptor* does not apply where the party has no opportunity to inspect the commodity; or that the parties, under the circumstances of that case, intended only waste silk which was merchantable, then is the case clearly wrong. The mere fact of the article not being merchantable, is not sufficient, as appears by *Parkinson v Lee*, 2 *East*, 314, and *Le Neuville v Nourse*, 3 *Campb.* 350. Also *Holden v Dakin*, 4 *Johns. Rep.* 421. *Gray v Cox*, 10 *Serg. & Low.* 283.

*Wirt*, (Attorney-General of *U. S.*) on the same side. The contract of sale in general did not come into view in this case. It is not whether the plaintiffs might not maintain *assumpsit* on an implied warranty. But whether they can maintain this action on the case sounding in deceit—charging a fraudulent and deceitful warranty. Every count in the declaration is for deceit—the same as if they had stated that the defendant knowing at the time the representation to be false. The words used charged the *scienter*, in express terms. *Bayard v Malcolm*, 1 *Johns. Rep.* 453. 2 *Chitty's Plead.* 311, 318, *(note a.)* *Craft v Boite*, 1 *Saund.* 242. *Harman v Tappenden*, 1 *East*, 563. *Williamson v Allison*, 2 *East*, 446. Where the party is charged with deceit and fraud, it must be proved. 2 *Chitty's Plead.* 316, *(note u.)* Upon an *express* warranty, the *scienter* need not be alleged or proved. But it is otherwise in the case of an implied warranty. 2 *Selw. N. P.* 580, 582, *(note 2.)* Where the word *warranty* is used in the books, it means ex-

press warranty. 1 *Chitty's Plead.* 140, *(note l.)* 2 *Chitty's Plead.* 136, *(note r.)* The court below meant an express warranty. They say, in the *fourth* bill of exceptions, that if it was an express warranty, then the plaintiffs could recover, but that there was no evidence of an express warranty; and the plaintiffs could not recover unless the jury find that the oil was not winter pressed oil, and that the defendant knew it was not. *Shepherd v Kain,* 7 *Serg. & Low.* 82, though not fully reported, is a decision on the very case before this court. The bill of parcels is no evidence of an express warranty. A name given to an article in a bill of parcels is not an express warranty. It only amounts to an implied warranty. Parol evidence is not admissible to invalidate a bill of parcels. Who is to expound it? The court. The opinion of the court below is correct according to the declaration, the evidence and the law. There must be wilful deceit, &c. 2 *Dain's Ab.* 560, *s.* 16. Where the warranty goes to the quality of the article sold, it must be an express warrant, or a deceit. 2 *Com. Cont.* 265. If this is a warranty, it goes to the quality of the article, and the plaintiffs cannot recover unless the warranty is an express warranty. *Pasley v Freeman,* 3 *T. R.* 57. *Big. Dig.* tit. *Sale,* (B) 536, 537, pl. 1, 4.

*Taney,* in reply. What was the plaintiffs' cause of action, and what their rights to be enforced in a court of justice? This arises under the *first* and *second* bills of exceptions. Is the statement in the bill of parcels a warranty or not? If it is an express warranty, the court below erred in their opinion in the *first* bill of exceptions; but if it is an implied warranty, then the court erred in their opinion in the *second* bill of exceptions. The bill of parcels was a warranty—whether express or implied is immaterial. What is a warranty? It is a contract that a thing sold shall answer a particular quality. As for instance, that a horse shall be sound—that a particular thing or article shall be of a particular quality. If the defendant contracted to deliver winter pressed oil—if he engaged to do so, it is enough. No parol evidence can be offered to change the contract as stated in the bill of parcels. *Batturs v Sellers & Patterson,* 6 *Harr. & Johns.* 249. The defendant affirmed

in his bill of parcels, that he sold to the plaintiffs winter pressed oil. Every affirmation is a warranty, but there are exceptions as if it be the mere expression of an opinion, *Peake's Evid.* 228. *Chapman v Murch*, 19 *Johns. Rep.* 290. *Long on Sales*, 120, 124. 3 *Stark. Evid.* 1660 to 1663. *Roberts v Morgan*, 2 *Cowen's Rep* 438. *Pasley v Freeman*, 3 *T. R.* 57. The statement in the bill of parcels is an averment or declaration that the fact is as stated. It is a contract in relation to the article or thing delivered. It was an undertaking that the oil sold was winter pressed oil agreeably to the description given of it—an agreement that it should answer, as stated in the bill of parcels. *Jones v Bowden*, 4 *Taunt.* 847. *Yates v Pym*, 1 *Serg. & Low.* 446. *Tye v Finmore*, 3 *Campb.* 462. *Gardiner v Gray*, 4 *Campb.* 144. *Bridge v Wain*, 2 *Serg. & Low.* 486. *Shepherd v Kain*, 7 *Serg. & Low.* 82. *Laing v Fidgeon*, 1 *Serg. & Low.* 327. In *Chandelor v Lopus*, *Cro. Jac.* 4, the point decided is law, although the *dicta* is not law. The cases cited from the *New-York* reports are in conflict with the *English* decisions. Which are to be regarded as the soundest law? The *New-York* courts let in parol evidence to prove the intention of the parties to a bill of parcels. This court refused to do so in *Batturs v Sellers & Patterson*, 6 *Harr. & Johns.* 249.

The prayer in the *third* bill of exceptions assumes the bill of parcels to be a warranty. There was no distinction taken in the court below between an express and an implied warranty. It is now resorted to for the first time. *Assumpsit* or case will lie on an express warranty; and the *fourth* count is a good one on an express warranty; and it would be so in *assumpsit*. Upon an implied warranty, *assumpsit* will lie. But it has been urged that this is an implied warranty, and the plaintiffs cannot recover on the *fourth* count. There are different classes of implied warranties. But this is an express warranty, and must be treated as such. Implied warranties arise from the fraud or contract of the party. 3 *Stark. Evid.* 1660 to 1663. 2 *Com. Cont.* 267, 270. *Tye v Finmore*, 3 *Campb* 462. 2 *Chitty's Plead.* 277. It is not denied that case will lie on an implied warranty. 3 *Blk. Com.* 166. 2 *Com. Cont.* 263. 1 *Fonbl.* 120, *(note z.)* 2 *Chitty's Plead.*

278.  *Bayard v Malcolm*, 1 *Johns. Rep.* 453.  3 *Stark. Evid.*
1660.

*Curia adv. vult.*

DORSEY, J. delivered the opinion of the Court.    Three
questions have been argued in this cause.    The first (presented
by the 1st, 2d and 3d exceptions) is, whether the statement in
the bill of parcels, that the oil therein mentioned  was winter
pressed,  be a warranty of that fact?    The second, (arising on
the 4th exception,) is,  whether upon the whole proof permit-
ted to  go to the  jury,  the county court erred  in  instructing
them, that there was no  evidence that the  oil was warranted
winter pressed?   The third question (involved both in the third
and· fourth exceptions,) is,  can the appellants, having  sued in
case, and charged fraud and deceit, recover without proof of a
*scienter?*

It was not  denied in the argument, that after verdict the al-
legation of fraud and deceit  in the declaration is equivalent to
the charge of an actual *scienter;* and it was admitted, that if in
this case there be an express  warranty that the oil was winter
pressed,  then the  averment of fraud and deceit is immaterial,
and need not be proved.

Warranties on  the sales of personal  property have *usually*
been divided into two classes, express and implied.    To create
an express warranty, the word "warrant" need not be used;
nor is any precise form of expression required.    Any affirma-
tion of the quality or condition of the thing sold, (not uttered
as matter of opinion or belief,) made by  the seller at the time
of sale,  for the purpose of assuring  the buyer  of  the truth of
the fact affirmed,  and inducing  him to  make the purchase;  if
so received and relied on  by the purchaser, is an express war-
ranty.    And in cases of oral contracts on the existence of these
necessary ingredients to such a warranty, it is the province  of
the  jury to decide, upon considering  all  the circumstances at-
tending the transaction.    But of  written contracts, the court
are the expositors.    Whether the instrument contain an ex-
press warranty or not, they must determine; not leave the
question to be inferred by a  jury from a consideration of facts
*aliunde.*

Implied warranties arise by operation of law; they exist without any intention of the seller to create them; and may properly be divided into two kinds. The one untinctured by actual fraud or deceit; as the warranty of title; warranty that provisions purchased for domestic use are wholesome; and the warranty in executory contracts, or where the purchaser had no opportunity of inspection, that the article contracted for shall be saleable as such in the market. The other kind of implied warranties are those where fraud and deceit are of their very essence; without which they do not exist; as in cases where the seller of any article, knowing of its unsoundness, uses any disguise or artifice to conceal it, or represents it, (whether in the way of expressing opinion or belief, or otherwise,) to be exempt from such defect. Implied warranties are not conclusions or inferences of fact drawn by a jury; but they are the conclusions or inferences of law, pronounced by the court, upon facts admitted or proved before the jury. If the facts be controverted, the court hypothetically instruct the jury, that if they find such and such facts, then there is an implied warranty, and their verdict must be given accordingly; but if they do not find those facts then there is no implied warranty. Where an inquiry, therefore, is submitted to a jury, whether an affirmation or statement, made by the seller, of the quality of an article sold, be a warranty or not, the question would be, not whether it be an implied but an express warranty? Had the court below permitted this case to go to the jury to determine whether, upon the whole testimony offered, the oil was winter pressed oil, the question of express warranty only could have been the subject of their inquiry. The attempt therefore, by the appellee's counsel, to sustain the opinion of the county court, on the ground that the present action depends on an implied warranty, if these positions be correct, cannot avail them.

In support of the doctrine likewise insisted on, that conceding this to be an implied warranty, on which an action on the case could be sustained, without any allegation of fraud, yet, that fraud being charged must be proved, no case of acknowledged authority has been produced. The passages relied on to establish it in *Selwyn's Nisi Prius*, p. 482, 3, tit. *Deceit*,

are mere statements of the principles decided in *Dale's case*, *Cro. Eliz.* 44. *Springwell v Allen*, *Alleyn*, 91, and *Chandelor & Lopus*, *Cro. Jac* 4. The only point adjudged in the two former of these cases is, that he who sells a chattel without title, is not answerable to the purchaser, (from whom the property is recovered by the rightful owner,) unless he made an express warranty, or knew of the defect of his title. And the only point settled by the last case, except that in pleading affirmation of a fact, does not mean a warranty thereof, is, that if the seller of a horse, knowing him to be unsound, affirm to the buyer that he is sound; or if the owner of a stone of no real value, knowing it to be such, sell it to a person unskilled in such articles, as a diamond of great value, and affirm it so to be; that no action lies against him by the purchaser whom he has defrauded; and that it is the same thing whether he knew his affirmations to be false, or believed them to be true. It is unnecessary to say, that these decisions are at war with the settled axioms of the law, as recognized in all modern cases and writers on the subject. In an action on the case, upon an express warranty, fraud and deceit, though alleged, need not be proved, because the allegation is immaterial, the action being sustainable without it. The same reason will produce the same consequence in all actions on the case on implied warranties, where the *scienter* is not an essential ingredient of the right of action. This view of the subject accords with that found in *Long on Sales*, 120; where in treating of warranties in sales of personal property, it is stated "some warranties are implied by law without any particular stipulation between the parties. Thus the seller is always understood to undertake that the commodity he sells is his own; and if it prove otherwise, an action on the case, in the nature of deceit, lies against him to exact damages for this deceit. In contracts for provisions, it is always implied that they are wholesome, and if they be not, the same remedy may be had." Yet in either of those cases the seller is liable, though ignorant of the defect. But if sued, as directed, "in nature of deceit," where the *scienter* or fraud and deceit are always alleged, no recovery can be had, according to the doctrine contended for, without proof of actual fraud. In such cases the fraud and deceit are intendments

of law, not matters of fact necessary to be proved. As was justly observed by C. J. *Anderson*, who dissented from the other judges in *Dale's* case—"it shall be *intended*, that he that sold had knowledge whether they were his goods or not." It hence follows that the opinion of the county court cannot be supported on the principle urged in the argument of the third question.

Whether the statement, in the bill of parcels, that the oil was "winter pressed," be *per se* a warranty of that fact, is a question of more difficulty. In oral contracts much of the *colloquium* was never intended or understood by the parties to be essential component parts of the contract. But in written agreements nothing is inserted which is immaterial; no fact stated which is not presumed to be relied on by the parties, and for the truth of which the one does not bind himself to the other. Upon this principle it is, that mere recitals in deeds have been held to be covenants; upon this ground must rest the decision, that the action of covenant could be supported in *Crœmer v Bradshaw*, 10 *Johns.* 484. There the plaintiff declared on a bill of sale, by which the defendant, in consideration of $175, bargained and sold to the plaintiff "a negro woman slave, named *Sarah*, aged about thirty years, being of sound wind and limb, free from all disease." And the defendant in due form, in the covenanting part of the instrument, (omitting every thing as to age or soundness,) covenanted only to warrant and defend the slave, so sold to the plaintiff, against the defendant, and all other persons. The alleged breach was, that the slave was unsound, and affected with divers diseases, &c. *Per curiam* the words in the bill of sale, "being of sound wind and limb, and free from all diseases," are an averment of a fact, and import an agreement to that effect. The words were not used as a mere description of the slave; they amount to an express, not an implied warranty; to a warranty of the soundness of the slave. The plaintiff is therefore entitled to judgment.

If the bill of parcels be considered as the written contract between the parties, the statement therein that the oil was "winter pressed," could not be considered as mere matter of description, or of opinion or belief of the seller; but as the

averment of a material fact, of which he has taken to himself the knowledge, and the existence of which he warrants. This court, however, has never decided, that the bill of parcels is the written contract; nor is it designed at this time to express any opinion upon that subject; but in *Batturs v Sellers & Patterson*, 5 *Harr. & Johns.* 117, and 6 *Harr. & Johns.* 249, this court did decide that the bill of parcels in that case was written evidence of the contract; and could not be added to, or varied by, *oral* testimony. It follows as a necessary consequence, that, if the bill of parcels be "the written evidence of the contract," the terms and expressions thereof must receive the same construction that would be given them if expounded from the written agreement itself; where calling it "winter pressed oil," would be a warranty that it was such.

Upon *English* authorities, independently of any decisions in this state, it would appear, that a statement in a bill of parcels, or any similar instrument, of the quality of an article sold, is a warranty thereof. In *Yates v Pym*, 6 *Taunt.* 446, an action upon a sale note, (an instrument of no greater solemnity or obligation than a bill of parcels,) "of 58 bales of *prime singed* bacon," on account of a taint in some of it, Justice *Heath* decided "that the contract amounted to a warranty that it was prime singed bacon, and being in writing could not be added to by parol evidence." And on motion to set aside the verdict, the opinion of the learned judge was sustained by the court of common pleas. In *Shepherd v Kain*, 5 *Barn. & Ald.* 240, an action on the case for breach of warranty; the only evidence of which was the advertisement of a vessel as "copper-fastened;" yet sold with all faults; upon proof that she was only partially copper-fastened, *Best, J.* determined that the plaintiff was entitled to recover; and this opinion was affirmed in the court of King's Bench. These are cases in which was recognized an express warranty of quality, from the mere statement thereof in the sale note or advertisement.

As establishing a contrary doctrine, has been cited for the appellee, the case of *Jendwine v Slade*, a *nisi prius* decision of Lord *Kenyon*, in 2 *Esp. Rep.* 572. The action was brought to recover damages on the sale of two pictures, sold under a catalogue, wherein the names of the artists, who had been dead

some centuries, were placed opposite to the pictures; the ground of action being, that the pictures were not the works of those artists, of which, it was alleged, the catalogue was a warranty. Lord *Kenyon* said, "it was impossible to make this the case of a warranty; the pictures were the work of artists some centuries back; and there being no way of tracing the picture itself, it could only be matter of opinion whether the picture in question was the work of the artist whose name it bore, or not. What then does the catalogue import? That in the opinion of the seller the picture is the work of the artist, whose name he has affixed to it." Looking only to the facts in the case of *Jendwine v Slade*, and the decision of the judge upon them, it might perhaps be considered as entitled to all the weight in favour of the appellee, which his counsel have ascribed to it. But when the explanation and grounds of the opinion, as given by the judge himself, are adverted to, their only application to the case at bar, is to recognize the plaintiff's right to recover. He states that it is impossible to make, putting the name of the artist in the catalogue opposite the picture, a warranty, because it was the work of an artist some centuries back; and there being no way of tracing the picture itself, it could only be matter of opinion whether the picture in question was the work of the artist to whom it was imputed, or not. Suppose, instead of an ancient, it had been a picture of recent execution; what then, by necessary inference, would have been the opinion of the learned judge? Why, as there did exist a mode "of tracing the picture itself," therefore, by placing the name of the artist in the catalogue, opposite the picture, is not a mere expression of the opinion of the seller, but a warranty of the fact. The oil in controversy is no article of antiquity; it was manufactured but a short time before in *Nantucket*, where *Lewis* resided, and whence he brought it to *Baltimore*, and sold it as his own. Without great inconsistency and abandonment of his own reasoning, Lord *Kenyon*, (who decided *Jendwine v Slade*,) could not do otherwise than determine, that the statement in the bill of parcels that the oil was "winter pressed" was a warranty thereof.

As a general proposition, it is true, that in sales of personal property the seller is not answerable for any defects in the

quality or condition of the article sold, without an express warranty or fraud.   But the universality of this rule is qualified by many exceptions, much more inconsistent with it than the principle on which the appellants here rest their right to recover.   As if a manufacturer contract to furnish goods at a stipulated (even though it be a reduced) price, there is an implied warranty that the goods delivered be of merchantable quality.   To this effect is the case of *Laing v Fidgeon*, 6 *Taunt*. 108.   So also, if the buyer had no opportunity of ascertaining by inspection, the quality of the article, there is an implied warranty that it be saleable in the market, under the denomination by which it was sold.   Such are the cases of *Gardiner v Gray*, 4 *Campb.* 144, and *Bridge v Wain*, 1 *Stark*. 504.   It is not sufficient, that the article delivered, abstractedly bear the name of that contracted for; it must do more; there is an implied warranty, that it be of that quality which a commodity of that name must possess to be saleable in the market   Nay, such is the disposition of courts of justice to ingraft exceptions upon this general rule of law, that in *Gray and another v Cox and others*, in 4 *Barn. & Cres.* 108, *Abbott*, C. J. decided, "that the defendants, having sold the copper to be applied to a specific purpose, and having received for it the market price of the day, must in law be considered as warranting it to be reasonably fit for that purpose.   And the same doctrine was previously avowed in *Bluett v Osborne and another*, 1 *Stark*. 384, by Lord *Ellenborough*, who stated, that "a person who sells, impliedly warrants that the thing sold shall answer the purpose for which it was sold.

The cases of *Seixas v Woods*, 2 *Caine's Rep.* 48, and *Swett v Colegate*, 20 *Johns.* 196, have been mainly relied on for the appellee; and it must be admitted, that upon the principles on which they are professedly decided, it is not possible to reconcile them with the decisions in *England*, which have been referred to.   Regarding the facts only of these *New-York* cases, it might perhaps be urged, (but whether upon sustainable ground or not, we mean to intimate no opinion,) that they differ from the case at bar in this; here the statement relied on as a warranty, is of the quality of the thing sold, viz. that it was "winter pressed;" there the question was, whether the

selling an article as *Brazilletto* or *Barilla,* creates an implied warranty, that it be that for which it is sold. The court there, however, have placed their opinions upon no such distinction; but have broadly determined, that the shewing by the seller to the purchaser, of the invoice representing the quality, the advertisement of sale, and bill of parcels delivered to the buyer, all representing the same fact, are no evidence of a warranty (either express or implied,) of the quality of the article sold. Justices *Thompson* and *Kent,* by whom *Seixas v Woods* was decided, (*Lewis,* C. J. having dissented,) appear mainly to found their opinion upon the two old cases of *Chandler v Lopus,* and *Springwell v Allen;* to the former of which they are made by the reporter to give an entirely new version. They state the decision of the court to have been, that an action of trespass would *not lie for selling* a jewel, affirming it to be a Bezar stone, when in truth it was not, unless the defendant knew it not to be Bezar stone, or had warranted it to be such. The court in that case made no such decision. They held the declaration to be ill, "for as much as no warranty is alleged," (the nar having only stated, that the goldsmith "affirmed to *Lopus* that the stone was a Bezar stone.") And so far from intimating an opinion that the action could have been sustained, if the goldsmith had known the stone not to be a Bezar stone, they expressly state, that "although he knew it to be no Bezar stone, it is not material; for every one, in selling his wares, will affirm that his wares are good, or the horse which he sells is sound; yet if he does not warrant them to be so, it is no cause of action." As to *Springwell v Allen,* it professes to settle precisely the same question which arose in *Dale's* case; that no action would lie against a man selling the horse of another, which he believed to be his own. Many other cases are relied on, in *Seixas v Woods,* some of which are applicable to sales of real property only; and in none of them can aught be found further sustaining the opinion there pronounced, or more strongly militating against that now given, than the general rule before laid down, that in sales of personal property no warranty of quality is implied.

The case of *Swett v Colegate,* 20 *Johns.* 196, is in fact, a mere reiteration of what was decided in *Seixas v Woods*

The weight of the authority of *Seixas v Woods,* (and consequently of *Swett v Colegate,)* is however somewhat shaken by that distinguished jurist the late Chancellor *Kent,* by whom it was decided.    In his Commentaries vol. the 2d, page 274-5, after ample time for the most thorough investigation and mature deliberation upon the subject, when treating "of the implied warranty of the articles sold," he says "in *Seixas v Woods,* the rule was examined and declared to be, that if there was no express warranty by the seller, or fraud on his part, the buyer who examines the article himself, must abide by all losses arising from latent defects equally unknown to both parties; and the same rule was again declared in *Swett v Colegate.*    There is no doubt of the general rule of law as laid down in *Seixas v Woods;* and the *only doubt is* whether it was well applied in that case, where there was a description in writing of the article by the vendor which proved not to be correct, and from which a warranty might have been inferred." But yield to those cases (what we think them by no means entitled to) the full effect of establishing the universality of the rule, without an exception, that nothing but an express warranty or fraud will enable a purchaser to obtain an indemnity for a defect of quality in the thing purchased, the case before us stands unaffected by it.    The statement in the bill of parcels that the oil was "winter pressed" is regarded as an express warranty; and under the decision in *Batturs v Sellers &- Patterson,* 6 *Harr. & Johns.* 249, the court and not the jury, is the tribunal so to declare it.    The opinions of the county court, therefore, in none of. the exceptions, can be sustained.

But suppose the bill of parcels is not to be construed in the same manner that a written agreement between the parties should be, and is to be regarded as a mere receipt, and that, notwithstanding the case of *Batturs v Sellers & Patterson,* 6 *Harr. & Johns.* 249, parol evidence might be offered to prove the contract—is it possible that a jury could attach less weight to the written statement in the bill of parcels than they would do to *Lewis's* verbal affirmation of the same fact; which affirmation is an express warranty if so intended to be; of which intention in oral contracts the jury only are competent to judge.    Adverting then to some of the leading facts in proof

by the appellants, that they, for the first time, were about to become dealers in sperm oil; that "winter pressed" was of nearly double the value of summer pressed oil; that the price paid was that of winter pressed oil; that such was the temperature of the weather at the time of sale, that the most experienced dealers in the article could not distinguish the one from the other, but by the aid of chemical experiments by men of science; that in the bill of parcels it was denominated "winter pressed" oil; and that the appellee had admitted that he had sold it for best winter pressed oil, and that it was not, what he had sold it for; can the instruction given to the jury (as stated in the 4th exception,) that there was *no evidence* of a warranty be for one moment sustained? Would it have been an unreasonable inference from the facts to be drawn by the jury, that in the verbal contract the appellants required and received a warranty of quality? Upon what other ground can its insertion in the bill of parcels be accounted for?

It matters not that this testimony be contradicted, its force impaired by the proof adduced on the part of the appellee; in such circumstances it is the jury, not the court, who are to decide.

Dissenting from the opinions of the county court, on all the exceptions, let their

JUDGMENT BE REVERSED, AND A PROCEDENDO AWARDED.