ALBANY,
August, 1822.

SWETT
v.
COLGATE.

SWETT *against* COLGATE and others.

Though on the sale of goods, there is an implied warranty as to the *title*, yet the vendor is not answerable for their *quality*, or *goodness*, unless there is an express warranty, or fraud.

As, where the article sold was considered and described as *barilla*, and was examined by the vendee before the sale at auction, and a sample exhibited at the sale, and the article was supposed to be *barilla*, and purchased as such; but, afterwards, the vendee, on using some of the article, in the manufacture of soap, discovered that it was not *barilla*, but *kelp*, which greatly resembles it, but is an article 'of very little, or no value: *Held*, that there being no express warranty, or fiaud, on the part of the vendor, no action would lie against him, at the suit of the vendee, who had offered to pay for what he had used, and to return the residue ; and the bad quality of the article, therefore, was no defence to a suit brought by the vendor, to recover the price for which it was sold.

To constitute an express warranty, it is essential that the affirmation, at the time of sale, should be intended by the party as a warranty; otherwise, the affirmation is only matter of judgment, or opinion.

*ASSUMPSIT* for goods sold and delivered. The goods were consigned, by merchants in *England*, to the plaintiffs, in *Boston*, as their factors, who sent them to Messrs. *Goodhue & Co.* of *New-York*, and were invoiced as *barilla*. After offering the article, for some time, at private sale, Messrs. *G. & Co.*, pursuant to instructions, sent it to auction, where it was sold, after being advertised in the newspapers, to the defendants, at a credit of sixty days. *G. & Co.* offered it for sale as *barilla*, and it was advertised and sold as such, and was described in the bill of parcels, delivered to the defendants, as *barilla*. The quantity sold was 35 tons and 35 pounds, at 30 dollars per ton.

*Barilla* is a substance procured from a plant of that name, cultivated on the coasts of the *Mediterranean* sea, and there manufactured. It contains *soda*, or *alkali*, which constitutes its only value, being used in the manufacture of soap, and for which purpose, it was bought by the defendants, who are soap manufacturers. After using part of the article, the defendants discovered that it was not *barilla*, but *kelp*, which is a substance greatly resembling *barilla*, but containing a very small proportion of the *alkali*, or soda. *Kelp* is made in *Great Britain*, from sea-weed, and cannot be distinguished from *barilla*, except by analysis. *Barilla* contains about 50 per cent. of *alkali*, or soda, but *kelp* not more than 5 per cent. *Kelp* is not used in this country, in the manufacture of soap, nor for any purpose, it being in hard masses, and not worth the expense of breaking it up ; though it is used as a substitute for common salt, in *Great Britain*, where they use *barilla* in the manufac-

ture of soap. Previous to the sale at auction, the article was several times examined by one of the defendants, who bid for, and purchased it at auction, for them ; and a sam- ple of it was exhibited at the time of sale. *Goodhue & Co.,* before the sale, knew that the article was of bad quality, but did not know that it was any other than *barilla.* On discovering that the article was not *barilla,* and before the term of credit given at the sale was expired, the defendants offered to pay Messrs. *Goodhue & Co.* for six and three quarters tons which had been used, at the rate of thirty dollars per ton, and to return to them the residue ; but *Goodhue & Co.* being agents, declined the offer ; and the present suit was brought under their direction, in the name of the plaintiff ; it being agreed by the defendants, that no objection should be made on that account ; but that the case should be considered in the same manner as if the suit had been brought by the *English* consignors. The cause came before the Court, on a case containing the facts above stated.

*P. A. Jay,* for the plaintiff. If the article sold turns out to be different from what it was supposed to be by both par- ties, the civil law authorizes the vendee to rescind the con- tract ; but the common law does not. In other words, where there is no fraud, and no agreement to the contrary, the civil law throws the loss on the seller, and the common law upon the purchaser. If the law on the subject is settled and universally known, the one rule may be as equitable as the other. The rule of the common law of *England,* as it existed at the time of our revolution, was recognised and adopted as the law of this state, in the case of *Seixas* v. *Woods,* (2 *Caines' Rep.* 48.) and the doctrine of that case has since been steadily adhered to by this Court. (*Snell* v. *Moses,* 1 *Johns. Rep.* 96. *Perry* v. *Aaron, Id.* 129. *De- freeze* v. *Trumper, Id.* 274. *Holden* v. *Daken,* 4 *Johns. Rep.* 421. *Davis* v. *Meeker,* 5 *Johns. Rep.* 354. *Sands* v. *Taylor, Id.* 395. *Cunningham* v. *Speir,* 13 *Johns. Rep.* 392. *Fleming* v. *Slocum,* 11 *Johns. Rep.* 403. *Thompson* v. *Ashton,* 16 *Johns. Rep.* 316.) The same rule is recog- nised by *Washington,* J., in the case of *Willing and others.*

v. *Consequa,* (1 *Peters' Rep.* 317.) decided in the Circuit Court of the *United States.*

It is not denied, that in the later *English* decisions, slight circumstances have, sometimes, been considered as amounting to a warranty; but, even as the law now stands in the *English* Courts, the plaintiff is entitled to judgment. If *J. S.* orders goods, without seeing them, and the vendor sends goods which do not answer the description, *J. S.* is not bound to keep them, or to pay for them. This is too obviously just to require any argument or illustration. *J. S.* cannot be bound to pay for what he has not agreed to purchase. This will serve to explain many of the *English* cases which may be cited by the defendants.

Again: If *J. S.* buys on the representation of the vendor only, and without seeing the article, he is not bound to pay for it, if it should prove to be different from what it was represented. It is said, indeed, that the representation amounts to a warranty, but the true reason of the rule is, that the article delivered is not that which *J. S.* agreed to purchase.

If I agree with a wine merchant for a cask of *Madeira* wine, and that which he sends to me proves to be *Teneriffe* wine, I am not bound to pay for it. (*Gardener* v. *Gray,* 4 *Camp. N. P. Rep.* 144.) But if the wine is shown to me, and a sample is offered for me to taste, and after tasting the sample, I agree to purchase it, I must pay for it, though the vendor called it *Madeira* wine, and I paid the price of *Madeira,* and though it proves to be *Teneriffe;* unless the vendor *knew,* at the time of sale, that it was not *Madeira,* or unless he *warranted* that it was *Madeira.* So, where there is a sale by sample, the vendee is not bound to accept the bulk of the commodity, unless it agrees with the sample; but if it does agree with the sample, he is bound to pay for it, unless there be either *fraud* or a *warranty* on the part of the vendor. By a warranty, is meant any engagement, no matter in what words expressed, by which the vendor takes upon himself the responsibility as to the nature of the article sold. But as any form of words may amount to a warranty, where they are so understood by the parties, so no words will make a warranty, where they are not so understood by the parties.

It is admitted, in the present case, that there was no fraud on the part of Messrs. *Goodhue & Co.;* but it will be contended, that there was a fraud in the persons who consigned the article to the plaintiffs. But the case states, that *barilla and kelp* are so nearly alike in their appearance, that they cannot be distinguished without a chemical analysis; and the defendants, though in the constant habit of using *barilla,* in their manufacture, and therefore must have had great skill and experience in ascertaining the genuineness of the article, and though they repeatedly inspected it before the sale, were, after all, deceived in relation to it. Can it, then, be supposed, that merchants, not in the habit of using the article, could have been better judges of its nature? Fraud is odious, and not to be presumed.

The article was sold at auction, by sample, which the defendants examined; the only warranty, therefore, was, that the bulk of the article corresponded with the sample; and that it did so, is admitted. The bill of parcels did not amount to a warranty, nor was it intended as such; besides, the sale was consummated by the delivery. The bill of parcels merely ascertained the price or amount to be paid. Nor can it be objected, that a warranty is to be implied from the *invoice.* It was not exhibited at the sale, or shown to the defendants. It was merely sent by the shippers to their agent in *Boston,* and was not intended as a warranty or engagement. Supposing the owners to have acted with good faith, they must have sent such an invoice, because they believed it to be true. But it will be said, that though an *express* warranty is necessary, to make the vendor liable for the *quality* of the article sold, yet a warranty is always *implied* that the article is that for which it is sold. But no such distinction is to be found in the cases which have been cited. It is frequently the *quality,* that makes all the difference in the value of the article to the purchaser. In what else consists the difference between *Madeira* and *Port* wine? Between ale and small beer? or between rum and brandy? But, in fact, *barilla* and *kelp* are only different qualities of the same article. Each contains a mixture of *soda* with vegetable ashes. The only difference between them, which

the most expert chemist can detect, is, that one contains a larger proportion of soda than the other.

*Winter* and *Bolton*, contra, contended, 1. That from the facts in the case, it was to be inferred, that the real plaintiffs, the consignors in *England*, knew that the article in question was *kelp*, and not *barilla*. It was a fraud, therefore, in them, in invoicing and representing it as *barilla*, whereby their agents were induced to offer it for sale as *barilla*, and the defendants to purchase it as such. They ought not, then, to recover in this action. In *Beecker* v. *Vrooman*, (13 *Johns. Rep.* 302.) it was decided, that in an action to recover the price of goods sold, the defendant may prove a fraud or deceit in the sale, so as to defeat the action, or mitigate the damages claimed by the plaintiff. (S. P. *Grant* v. *Button*, 14 *Johns. Rep.* 377.)

2. The article in question having been advertised and sold as and for *barilla*, and so described in the bill of parcels accompanying the delivery of it to the defendants, an undertaking on the part of the vendors that it was *barilla*, is to be inferred. In *Bradford* v. *Manly*, (13 *Mass. Rep.* 139.) the defendant sold two casks of *cloves*, by a sample which was of the best quality of *Cayenne* cloves: but, after the delivery of them to the vendee, it was found that the casks contained a mixture of *Cayenne* cloves with those of an inferior and distinct species, of the growth of the *East Indies*, and which were of much less value; and the Court held, that a sale by sample was tantamount to an express warranty, that the article sold was of the same quality as the sample. Ch. J. *Parsons*, in delivering the opinion of the Court, mentioned a case decided by him at *nisi prius*, where the defendant advertised for sale good *Caraccas* cocoa, and the plaintiff examined it, before he made the purchase, but did not know the difference between *Caraccas* or other cocoa; and it was proved that the *cocoa* was of the growth of some other place, and of much inferior value to that of *Caraccas*; and he held, that the *advertisement* by the plaintiff was equivalent to an express warranty that the article was *Caraccas* cocoa. In *Bridge* v. *Wain*, (1 *Starkie's N. P. Rep.* 504.) the defendant sold to the plaintiff a quantity

of *scarlet cuttings*, intended for the *Chinese* market, and which were understood, among merchants, to mean cuttings of cloth only, without mixture of serge or other materials ; and it was proved that the article sold contained a quantity of serge, and part consisted of much smaller shreds than those usually sent to *China*, and would be very unprofitable, if not wholly unsaleable ; there was no special warranty, but the goods were described in the bill of parcels as *scarlet cuttings ;* and Lord *Ellenborough* ruled, that if they were sold by the name of scarlet cuttings, and were so described in the invoice, an undertaking that they were such was to be inferred. In *Gardiner* v. *Gray,* (4 *Campbell's N. P. Rep.* 144.) the declaration contained a count on a sale of twelve bags of silk, by sample ; but the *written sale note,* not mentioning it as a sale by sample, or specifying the particular quality, but merely twelve bags of *waste silk,* at 10s. 6d. per pound, Lord *Ellenborough* decided, that the plaintiff could not recover on the count alleging the sale by sample ; but he was of opinion, that, under the circumstances, the plaintiff was entitled to expect a saleable article, answering to the description in the contract ; that without any particular warranty, that was an implied term in every contract ; that where there was no opportunity to inspect the commodity, the maxim of *caveat emptor* did not apply. (*Prossen* v. *Hooper,* 1 *Moore's Rep.* 106.) In *Jones* v. *Bowden,* (4 *Taunt. Rep.* 347.) *Heath,* J. mentioned a trial before him in an action on the sale of sheep, sold as *stock ;* and the evidence was, that, by the custom of the trade, stock were understood to be sheep that were sound ; and he directed the jury that it amounted to an implied warranty that they were sound ; and that direction was never questioned. In *Chapman* v. *Murch,* (19 *Johns. Rep.* 290.) it was decided, that any express or direct *affirmation* of the quality and condition of a thing, as contradistinguished from opinion, &c. or any words of equivalent import, showing the intention of the parties that there should be a warranty, will be sufficient to support an action on a warranty of the soundness of the chattel sold.

3. Though there must be an express warranty as to the *quality* of the article sold, yet we insist there is always an

*implied* warranty that the article is that for which it is sold ; and such appears to be the understanding of the Court in the cases which have been cited. (*a*)

WOODWORTH, J. delivered the opinion of the Court.

The defendants purchased, at auction, the goods in ques-tion, invoiced as *barilla*, and advertised and sold as such ; but there was no warranty, nor any concealment on the part of the vendors.

The goods were consigned by certain merchants in *Eng-land* to the plaintiffs, who sent them to Messrs. *Goodhue & Co.* at *New-York*, to be sold ; they were described as *barilla* in the bill of parcels. After the purchase, the de-fendants discovered, that the article purchased was not *barilla*, but *kelp*. Before the sale, they inspected and examined it ; and a sample was exhibited, at the time of sale. *Goodhue & Co.* knew it was an article of bad quality, but did not know that it was other than *barilla*.

I cannot discover any thing in this case that will justify the charge of unfairness or imposition. *Kelp* is a substance greatly resembling *barilla*, and from which it is not easily distinguishable. The defendants first made the discovery, after they had used a part. There is no ground to suppose,

(*a*) *Fonblanque*, (*Treatise of Equity*, vol. 1. p. 109. note *x*.) observes, that "The writers upon natural law maintain, that an error about a thing, or about its quality, upon prospect of which a man is induced to come to any agreement, renders the agreement, or bargain, void ; for, in such case, a man is not conceived to have agreed absolutely, but upon supposal of the presence of such a thing, or quality, on which, as on a necessary condition, his consent was founded ; and, therefore, the thing, or quality, not appearing, the consent is understood to be null and ineffectual ; (*Puff. L. N. and N.* b. 1. c. 3. s. 12.) and the civil law, on this principle, seems to have required the seller, in some cases, to declare the defects of the thing sold. (*Dig.* lib. 21. tit. 1. l. 1. s. 1. *Domat's C. L.* b. 1. tit. 2. s. 11. *Cicero de Officiis*, lib. 3. c. 12, 13, 14.) But the general rule of the common law of *England* is, *caveat emptor*, upon which rule, it seems, the vendor, without an express warranty, merely undertakes to make a good title to the vendee ; to show that the goods delivered are such as were contracted for :" " In the sale of goods, the law implies the warranty of title ; for the purchaser cannot have better evidence of title to goods, than the possession of the vendor." (*Id.* 373. n. *k.* 371. n. *h.*) (See, also, *Pothier, Traité des Oblig. Part* 1. c. 1. s. art. 3. n. 17, 18, 19, 20. 3 *Black. Com.* 164, 165. 1 *Carth.* 90. Lord *Raym.* 593. 1 *Salk.* 210. 3 *Term Rep.* 57. 2 *Dallas' Rep.* 91. 1 *Hayw. Rep.* 464. 2 *Bay's Rep.* 380. 2 *Caines' Rep.* 48.)

that the consignors knowingly made a false representation. They were, probably, deceived themselves, and cannot be subjected to the imputation of fraud, unless that fact be clearly established by proof. The question, then, is, whether the loss shall fall on the seller or the purchaser ?

By the common law, where there is no fraud or agreement to the contrary, if the article turns out not to be that which it was supposed, the purchaser sustains the loss : the rule is *caveat emptor*. If he doubts the goodness of the article, or does not choose to incur the risk of a latent defect, he may refuse to purchase without a warranty. The leading case in this Court, is that of *Seixas* v. *Woods*, (2 *Caines*, 48.) which was an action for selling *peachum wood* for *brazilletto ;* and it is very analogous to the present case. The article was advertised and invoiced as *brazilletto*, and described as such in the bill of parcels, and supposed so to be, by the parties. The plaintiff's agent saw the wood, when unloaded and delivered, and no fraud was imputed. The principle established was, that to maintain an action for selling one article for another, there must be either a *warranty* or *fraud*. This seems to have been the uniform language of the *English* law, and has been recognised in this Court by subsequent decisions. (*Snell* v. *Morris*, 1 *Johns. Rep.* 96. *Perry* v. *Aaron*, 1 *Johns. Rep.* 129. *Defreese* v. *Tremper*, 1 *Johns. Rep.* 274. *Holden* v. *Dakin*, 4 *Johns. Rep.* 421. *Davis* v. *Meeker*, 5 *Johns. Rep.* 354, 395. *Cunningham* v. *Spier*, 13 *Johns. Rep.* 392. *Fleming* v. *Slocum*, 18 *Johns. Rep.* 403.)

There are no particular words prescribed by law to make out a warranty ; but it is essential that the affirmation made at the time of sale, be intended by the parties as a warranty, and this must appear by the evidence ; if it does not, the affirmation is considered as a mere matter of judgment and opinion. (2 *Caines*, 56. 3 *Term Rep.* 57.) The article sold to the defendants had uniformly been considered and described as *barilla*. The bill of parcels followed this description, which both parties at the time believed to be the true one ; but it was evidently an opinion, and not a warranty. With respect to the title to the goods sold, an express warranty is not necessary ; for it is a general rule

ALBANY, that the law will imply a warranty of title, and that is all
August, 1822. the defendants can require. The rule is correctly laid down
STERLING in 2 *Black. Com.* 451. that " with regard to the goodness of
v. wares purchased, the vendor is not bound to answer, unless
SHERWOOD. he expressly warrants them to be sound and good, or un-
less he knew them to be otherwise, and hath used any art
to disguise them, or unless they turn out to be different
from what he represented them to the buyer." (1 *Johns.
Rep.* 275.) The latter alternative would apply to a case
where the purchase was made on the representation of the
vendor, without seeing the article. The purchaser would
not be bound to pay for it, if it proved to be different from
the vendor's representation, because, then it is not the thing
agreed to be purchased. If a vendor agrees to sell and
deliver *Madeira wine,* and he sends *Teneriffe,* the vendee
is not bound to pay. The sale in this case was by sample.
The purchaser was not bound to accept the article pur-
chased, unless it agreed with the sample ; but it did agree,
and that absolved the plaintiffs from further responsibility.
(4 *Camp. N. P. Rep.* 144.) There was no implied
undertaking as to the quality. A sample was fairly taken
from the bulk ; the defendant exercised his judgment on it,
and bought it at his own risk.

We are of opinion that the plaintiffs are entitled to
judgment.

Judgment for the plaintiffs.