Ely *v.* O'Leary.

---

## Ely *v.* O'Leary.

Where a party agrees to purchase an article specified to be of a certain quality, he is not bound to accept and pay for a different article; and after delivery, he has a reasonable time to examine and ascertain whether his contract is in fact fulfilled.

But if he examines the article when tendered, retains it, and pays the price, the sale is consummated, and the purchaser cannot then, without having offered, after a further examination, to return it, or given notice to the seller to resume possession, maintain an action to recover damages for the inferiority of the article delivered to that called for by the contract.

So held, where the article called for by the contract was a certain kind of waste paper, called "prints," and the seller delivered "papers"—a name given to an inferior article, of the same general description. *Per* WOODRUFF, J., INGRAHAM, FIRST J., concurring; DALY, J., dissenting.

Where goods are delivered under an executory contract of sale, the purchaser is bound to accept them as a performance of the contract, or, upon discovering their inferiority, reject them, and give notice of such rejection, or his acquiescence in the quality will be presumed.

Otherwise, *it seems,* where the action is not on the contract, but is in the nature of an action on the case for fraud or deceit. Hence, where a party, bound by an executory contract, resorts to artifice, false packing, or other means, to disguise the quality and deceive the other party to the contract, he is liable for *all* the damages occasioned by his deceit or fraud.

And, *it seems,* also, that where there is an express warranty, or representation amounting to a warranty, different rules apply.

A justice's finding of the amount of damages, suffered by a breach of contract, must be sustained by competent evidence in the return. Judgment should not be given upon a *mere estimate.*

THE plaintiff brought his action in one of the lower courts,

alleging a contract, on the part of the defendant, to deliver a certain quantity of "prints," and averring, as a breach of the contract, that the defendant had not delivered the article called for, but had substituted "papers." These were terms given to different qualities of waste paper, by dealers therein, the former word being applied to a quality superior to that designated by the latter.

The damage claimed, was the alleged difference in value between the article furnished and that required by the contract of sale. The case established upon the trial, appears in the opinions delivered upon the appeal, which was brought by the defendant, from a judgment recovered in favor of the plaintiff.

WOODRUFF, J.—The court below have found specifically that the defendant in this case sold to the plaintiff "prints," and that he *packed up* "papers ;" and upon this ground gave judgment for the plaintiff.

The agreement testified to is a "bargain made by the plaintiff to take all the defendant's prints at two cents a pound."

I have no doubt that if under such an agreement the defendant packed up and delivered an inferior article called "papers," the plaintiff was neither bound to accept nor pay the price. And it is, I think, equally clear, that the plaintiff had a reasonable time after the delivery, to open and examine the goods, to ascertain whether the article offered to him was in fact the article he had purchased, and if it proved otherwise, he was not bound to accept or pay therefor.

. But if the purchaser does examine the goods when tendered, and pays the price, and keeps the goods, the contract of purchase and sale is fully consummated. The parties stand in the same relation to the subject matter as if they had never met before the presentation of the goods for delivery, and had then entered into the contract of purchase and sale, the purchaser examining the goods, paying the money, accepting the delivery, and retaining the goods.

It appears, that in this case, the plaintiff, after the making of the above mentioned agreement, sent the witness, Newbig, to the "defendant's place" to mark the sacks in which prints ready for delivery were packed. That he marked the sacks for Springfield, New Jersey. That he marked about "one ton weight," and examined a part of them, say three out of twelve sacks; but he says he could not examine down more than three inches into the sack. That *subsequently* to this, he marked more sacks of the same sort. The *first lot*, he says, were good.

It would seem, then, that the lot *secondly* delivered were not in fact examined, before being marked for Springfield, New Jersey. Why they were not examined does not appear. It is not shown that there was any thing in their condition to prevent their being subjected to the same scrutiny as the first lot. And although the witness says that he could not examine the first lot more than *three inches down*, it would seem that that was sufficient to enable him to ascertain what in fact he says proved true, to wit, that they were good. Besides, the plaintiff was not bound to accept them without such scrutiny as was necessary to learn whether they were of the quality stipulated for. And, so far as I can discover from the evidence, he had an opportunity to examine, if he chose to do so.

It should be borne in mind, that the only difference between what the witnesses call "prints" and "papers" is, that while both are waste paper, the quality of the latter is inferior to that of the former.

I do not understand, that according to any view of such an agreement as is above testified to, the plaintiff, when the defendant offered him the goods at his own place, in performance of his contract, and gave him an opportunity to examine them, if he chose, could accept the goods, remove them and sell them, and then maintain an action on the original contract for non-delivery, on the ground that the articles delivered were not of so good a quality as he had a right to require.

Ely *v.* O'Leary.

It is argued that the plaintiff had not sufficient opportunity to examine the articles. I think the proof fails entirely to show any such impracticability of making an examination as should take the case from the ordinary rule. And if it be conceded that by reason of the condition of the goods at the time of delivery the examination was so inconvenient that the acceptance should have been deemed conditional only, yet I apprehend that if, on examination subsequently, the plaintiff chose to retain them *without notice* or offering to return them, he must be deemed to acquiesce in the quality of the goods, and to *keep them* as a performance of the defendant's contract. Though he may not have been bound to make an actual return of the goods, he should at least have given notice to the plaintiff, so that he might have had an opportunity to make such disposition of the goods as he thought proper. (*Vide Howard* v. *Hoey*, 23 Wend. 352–4; *Hargous* v. *Stone*, 1 Selden, 86–7, and cases there cited.)

Here the plaintiff kept the goods, and if the articles mentioned by the witness, Campbell, are assumed to be the same, the plaintiff, notwithstanding the alleged inferiority, sold them at a profit of one half cent per pound, viz., at two and a half cents. And the witness adds, that he never paid more than that price for the *best quality* of prints that year.

I am clearly of opinion, that the plaintiff was bound to accept them as performance of the defendant's executory contract, or to reject them so soon as he discovered the alleged inferiority, and give notice of such rejection; and that not having done the latter, he must be deemed to have acquiesced in the quality.

I do not mean to be understood that an action on the case for fraud or deceit would be governed by the same rules. Where, as may perhaps have been true in this case, the party bound by an executory contract resorts to artifice or false packing, or other means to disguise the quality and deceive the other party to the contract, he is liable for *all* the damages occasioned by his deceit or fraud; but this is an action on the *contract*.

Nor where there is an express warranty, or a representation amounting to a warranty, is the case to be disposed of upon the same grounds.

In this action, the inquiry is, did the defendant perform his contract to deliver prints? And did the plaintiff accept the articles delivered, as prints, and retain them as a satisfaction of the contract?

I have thus considered this appeal upon the grounds urged by the respective counsel against and in support of the judgment. It is, however, most obvious, upon perusal of the return, that there was no evidence whatever that the goods delivered were not prints of the best quality, except that the plaintiff, in order to contradict one of the defendant's witnesses, proved a statement of such witness, out of court, that he thought some of the papers were not good enough, and that the defendant said that they were good enough. This was not evidence in chief for the plaintiff—it was only admissible, if at all, and only received, as impeaching testimony.

Besides this, no witness identifies any papers or prints, good or bad, as the goods delivered by the defendant. The plaintiff's witness testifies that the first lot were good; that he subsequently marked the second lot—*all* were marked for Springfield, N. J.

And the only evidence offered by the plaintiff to show that the contract was not performed, is that of the witness Campbell, who testified thus: "I have been in the habit of purchasing prints of the plaintiff; and in July, August and September last, I did every five or ten days. "I purchased 15,994 pounds. "They were not prints, but were a good quality of papers;" and in a subsequent stage of his examination, he says, "Papers are far inferior to prints—the difference in value would be half a cent a pound." He afterwards says, "They might have been called a very inferior quality of prints."

Here is not the slightest evidence that the prints or papers spoken of by Campbell were the papers or prints delivered

by the defendant. On the contrary, it is proved that the latter were sent to Springfield, N. J., for which place they were marked.

Again, there was no warrant for a finding in the plaintiff's favor of $40 damages. The first lot received are shown to have been good, and there is not the slightest evidence of the quantity contained in the second. The plaintiff's witness says, "Subsequently, I marked *more* sacks." How many sacks, how many pounds, in no wise appears; and by what rule or measure of damages the court below have found the damages to be $40, it is difficult to perceive.

But upon the first ground (since no point was made upon the want of evidence to support the judgment) I think the judgment should be reversed.

DALY, J.—It may be inferred, from the testimony, that there was an executory contract between the parties, for the purchase of all the "prints" which the defendant had, at two cents per pound; but as respects the twelve sacks in question, the contract was executed, as they were delivered and paid for. The rule, therefore, that the purchaser is presumed to acquiesce in the quality of the goods, from his omitting to return them or to give notice to the seller to take them back, after he has had a reasonable time for examination, is not applicable. It may also be inferred, that the sale was by sample, inasmuch as there was a general agreement for the purchase of all the "prints" which the defendant had, and there had been previous purchases of the article known as "prints," between the parties, at the same price. The twelve sacks appear to have been of an inferior quality of paper, distinguishable from "prints" by the trade term of "papers," and as there was no proof of an express warranty, it remains to consider whether, from the nature of the article and the manner of the sale, a warranty was implied that the article should be of the same description as the one previously furnished, or whether the evidence was sufficient to warrant the justice in finding that the article was put up by the defend-

Ely *v.* O'Leary.

ant with the intention to deceive. In other words, whether there was fraud. The only exception recognized in our courts, to the general rule of *caveat emptor*, in the sale of merchandise, has been in a sale by sample of cotton packed in bales, in which, from the trouble and expense attending the unpacking and repacking of the bales, a warranty is implied that the bulk of the article corresponds with the sample. (*Beebe* v. *Roberts*, 12 Wend. 419; *Boorman* v. *Jenkins*, Id. 576.) The sale of provisions, for domestic use, is not an exception, but rests upon the presumed knowledge of the seller that they are wholesome and fit for use. (*Moses* v. *Mead*, 1 Denio, 378.) The soundness of excepting the case of cotton, packed in bales, from the operation of the general rule, where the buyer has the opportunity of inspecting it, has ever been doubted. (*Hargous* v. *Stone*, 1 Selden, 73.) And the court refused to depart from the general rule in the case of Italian hemp packed in bales, when the purchaser had opened and examined one of the bales, and had the opportunity of examining the rest if he had thought fit. (*Salisbury* v. *Stainer*, 19 Wend. 159, and the case above cited from Selden.) Justice PAIGE was of opinion, that sheetings packed in bales formed no exception. In the present case the paper was in sacks. The plaintiff's agent examined three out of the twelve, but could examine down no more than three inches into the sacks; and the witness Campbell, who saw them after they were packed, says, that they were so closed that the contents could not be seen. The only difference between this case and that of the bales of Italian hemp is, that the purchaser in that case opened and examined one of the bales; and there is nothing in this case to show that the plaintiff's agent might not have opened and examined these sacks. If he had opened and examined one of them, he would have found the two cases would have been precisely alike. If the contents of all the sacks were, as is alleged, "papers" instead of "prints," this examination would have been sufficient to show the general character of the whole; so that the case before us is not as strong as *Salisbury* v. *Stainer*. There being an opportunity

for examination, and nothing to show that it would have been attended with great trouble and expense; no warranty can be implied.

But though this was not a case where a warranty would be implied, I think the judgment of the justice may be supported, upon the ground that this was a sale of an article known and recognized to be of a different description or kind from the one contracted for, and that he was warranted in finding that the defendant had knowledge of the fact. The question of implied warranty usually arises when the article sold is of the proper kind but of inferior quality; but the sale of one article for another presents a very different question.

In such case, if the seller is guilty of an imposition or fraud, but is equally ignorant with the buyer of the true character of the article, and the latter has had an ample opportunity for examination and the exercise of his judgment, the loss will fall upon him, as in *Stuart* v. *Colgate*, (20 Johns. 196,) where the defendant, who was the consignor, sold to the plaintiff an article as "*barilla*," which turned out to be "*kelp*," a substance of little or no value, but so strongly resembling barilla as to be distinguished with difficulty; the sale being made by sample, fairly taken from the bulk, and corresponding with it, and it being admitted that the consignor was equally ignorant with the plaintiff of the real character of the article. And see *Seixas* v. *Wood*, 2 Caines, 48; *Henshaw* v. *Robbins*, 9 Met. 83; *Bomkins* v. *Bevans*, 3 Rawle, 23; which latter cases go the length of declaring, that in all sales there is an implied warranty that the article corresponds in kind with the commodity sold, unless there are circumstances showing that the purchaser took upon himself the risk, or waived his right. Here the article contracted for was known by the term of "prints," and the article furnished by that of "papers"—an inferior article of paper, worth half a cent per pound less. In this respect, the case somewhat resembles *Gardiner* v. *Gray*, (4 Camp. 143,) where an article was sold as "waste silk," which, upon examination, turned out to be silk of an inferior kind, and not

saleable under the denomination of waste silk. I think the justice was fairly justified in inferring from the evidence that the real character of the article sent was fully known to the defendant. It was put up by him. There was evidence showing that one of his men was about to throw some papers out while the sacks were being made up, because he thought they were not good enough, but was prevented by the defendant, who told him to put them in. This shows that he had knowledge of the contents, and that he knowingly imposed upon the plaintiff an article, different in kind from that which had been previously furnished.

INGRAHAM, FIRST J.—I concur in the opinion of Judge WOODRUFF.

