## DEMING *v.* FOSTER.

42   165
f68   354
42   165
70   623

Proof of a qualified or conditional warranty on the sale of personal property will not support a declaration on an absolute warranty.

Upon the sale of a specific article, then present and subject to examination, no warranty of its quality or fitness for a particular use will be implied, though the seller is aware that the article is purchased specially for such use.

Where an express warranty is made upon a sale, no other will be implied.

A party will be bound by an express warranty of quality, distinctly made at the close of a negotiation, though he may, in the course of the previous conversation, have stated the truth on the same point.

The court may order a deposition to be taken during a trial, and upon such notice as to time as they may think reasonable; but they will not dispense with the written notice required by statute.

ASSUMPSIT for breach of warranty in the sale of a yoke of oxen by the defendant, John E. Foster, to the plaintiffs, Ebenezer R. Deming and others, September 18, 1858, for $105. The writ, as amended, contained four counts, the first three alleging, with some variations, but substantially to the same effect, an express warranty in words that the oxen were kind, orderly, right every way, the best cattle the defendant ever knew, could not be improved, &c., and averring as a breach that the oxen were unkind, disorderly, not right every way, not the best cattle the defendant ever knew, and not incapable of improvement for the better, and that they were addicted to hauling, would not hold back, and could not be made to hold back going down hill, &c.

The fourth count was upon an implied promise or warranty, averring that the plaintiffs avowedly purchased, and the defendant knowingly sold the oxen to do the ordinary ox work upon a farm, and that in thus selling them for that use for an adequate price, the defendant warranted them to be reasonably fit, handy, and suitable therefor, whereas they were otherwise, &c.

Upon the general issue the plaintiffs' testimony tended to prove the sale and warranty of the oxen by the defendant, substantially as alleged in the first three counts, and the breach as there stated, and that the oxen were purchased by the plaintiffs and sold by the defendant expressly as oxen to do the work upon a farm; but it appeared from the testimony, that in the course of the negotiation for the oxen, the defendant told the plaintiffs that the off ox needed a little watching going down hill. Whereupon one of the plaintiffs asked him if they would not hold going down hill, and the defendant replied, " Oh, yes; they are as good a pair to hold as ever was, and could not be altered for the better; but the off one wants a little looking after, that is all."

The defendant objected to this evidence as incompetent, and not tending to prove either count of the declaration, each of them alleging a general promise, while the evidence tended to prove only a limited or qualified promise or warranty; but the objection was overruled.

The plaintiffs having rested their case, the defendant moved for a nonsuit, because the evidence did not support the declaration, by reason of the variance; but the motion was denied.

The plaintiffs were permitted, against the defendant's objection, to read the deposition of W. Bass, taken under the following circumstances:

Bass, an important witness for the plaintiffs, residing at Bath, fourteen miles from the place of trial, was summoned by them, but was taken sick just before the commencement of the trial, and was unable to attend court. His deposition had been taken by the defendant, but he declined to allow the plaintiffs to use it. The plaintiffs then moved the court that the witness' deposition might be taken pending the trial, by a commissioner, and the court made such order. Notice was given of the time and place of taking it, but it was not then done from the

illness of the witness. The defendant resisted and objected to the whole proceeding. The deposition was ultimately taken without any previous notice of the time of the taking, by the commissioner, in presence of one of the plaintiffs, but in the absence of the defendant and his counsel.

The evidence of the defendant tended to show that he informed the plaintiffs, at the time of the sale, substanstially what were the peculiarities and defects of the oxen.

The court instructed the jury, among other things, that in order to be entitled to their verdict, the plaintiffs must have satisfied them by the evidence introduced before them, either that the defendant warranted the oxen by express words, substantially as set forth in one of the first three counts of their declaration, and that this warranty had been broken, substantially as alleged in that count, or that in the absence of any warranty in express words the defendant knowingly sold the oxen for a particular use, for which they were avowedly purchased, and that they were not reasonably fit and suitable for the use for which he sold them; that if a man for a full price sell an article or an animal for a particular use, for which alone he knows it to be purchased, although nothing whatever be said in relation to its merits, the law will imply a warranty by him, that it is reasonably fit and suitable for the use for which he sells it; but that the position taken by the defendant, and which his evidence tended to prove, that he told the plaintiffs, at the time of the sale, substantially what the peculiarities and defects of the oxen were, if they found it sustained upon all the evidence in the case, was a complete and perfect answer to the claim of the plaintiffs in both its forms, since, if the defendant told the plaintiffs substantially what the oxen were before they bought them, he could have made no false warranty, either in express words, or by implication of law.

A verdict was returned for the plaintiffs. The defendant moved to set it aside, for supposed errors in the rulings and instructions of the court.

*Woods* and *Binghams*, for the defendant.

The plaintiffs' evidence did not sustain either count in their declaration, and a nonsuit should have been ordered. The sale was made at one meeting. The representation that the off ox needed watching, going down hill, was made in the course of the negotiation for the oxen, and a part of the representation, made by the defendant to the plaintiffs, of the character of the oxen. The evidence shows no formal warranty or promise. It is a warranty to be gathered from all the representations made upon the point, at least of which there is claimed to be a breach, and the declaration should state the entire identical promise made, and it must be proved, as it is alleged, neither more nor less. This is the doctrine laid down in 2 Smith's L. C. 645, 646; 1 Chit. Pl. 309, 310.

The declaration states the promise that the oxen were kind, orderly, right every way, &c. The evidence is, the defendant said all that, and this in addition, "but the off ox needs a little looking after, going down hill, that is all."

We say this promise is less than that alleged. It is qualified, limited. The issue on one promise would be, if the cattle needed any watching; on the other, whether they needed a little, or more than a little. The defendant has a right to know the exact claim on which he is sued, that he may be prepared to meet it, and that it may be a bar to another suit. *Whitcher* v. *Smith*, 4 Pick. 83; *Stone* v. *Knowlton*, 3 Wend. 374; *Somers* v. *Winter*, 7 Cow. 263; *Trask* v. *Duval*, 4 Wash. C. C. 97; 1 Chit. Pl. 309, 310; 2 Chit. Pl. 280, note *n*.

The qualification the defendant made to his promise was vital — the very gist of the matter. There was no

Deming v. Foster.

trouble with the oxen, except in the very matter of the off ox going down hill. There are many cases where the declaration omitted to state an exception or qualification less material or important than this, where the court have ordered nonsuits. *Norris* v. *Littlegor*, 2 Smith 374. In assumpsit on a warranty of a horse as sound in the eye, except a slight snap, which will be well in a few days, it was held the exception was material and must be stated. 3 Harr. Dig. 2144; see *Jones* v. *Canly*, 10 E. C. L. 377; *Hemming* v. *Perry*, 25 E. C. L. 550; *West* v. *Emery*, 17 Vt. 584; Chit. Cont. 466.

The plaintiffs' evidence showed there was an express warranty; hence there could be no implied warranty to sustain the fourth count, and the nonsuit should have been ordered. *Newman* v. *McGregor*, 5 Ohio 349; *Britton* v. *Turner*, 5 N. H. 481; *Groundsell* v. *Lamb*, 1 M. & W. 352.

The plaintiffs can not recover in this form of action unless there is a warranty, either express or implied. They can not recover for deceit. *Mahurin* v. *Harding*, 28 N. H. 128; *Crooker* v. *Willard*, 28 N. H. 134, note; *Bedel* v. *Stevens*, 28 N. H. 118.

As to the deposition of Bass, the question is whether the statutes authorize the taking of depositions without notice, and when the party taking knows the adverse party is engaged in trying his cause before the jury, without his consent. We say not. Comp. Stat., ch. 200, secs. 13, 14, 15; *Carter* v. *McDaniel*, 21 N. H. 231; *Ela* v. *Rand*, 4 N. H. 54; 21st Rule of Court. The defendant was not present at the taking. No notice was given, and none was annexed to the caption, which is a statute requirement. Comp. Stat., ch. 200, sec. 21; *Carleton* v. *Patterson*, 29 N. H. 580. It was no denial of any legal or honorary right, for the defendant to decline to give them the deposition he had taken. *George* v. *Fisk*, 32 N. H. 46.

It was the settled rule of the common law in England,

from *Chandelor* v. *Lopus*, Cro. Jac. 4, to and including *Parkinson* v. *Lee*, 2 East 314, that a seller is not liable for defects of the thing sold, unless there was express warranty or fraud in the seller. Chit. Cont. 449 ; 2 Kent's Com., 4th Ed., 48, note ; *Seixas* v. *Wood*, 2 Caines 48, note ; *Laing* v. *Fidgeon*, 6 Taunt. 108 (1808) was the first innovation on the rule. It was held (in ten lines) that in a sale of chattels there is an implied warranty that the same are merchantable. So said in *Jones* v. *Bright*, 5 Bing. 533. It was really a sale by sample. The cases following this, in England, in which the doctrine of implied warranty is asserted, are generally decided on other grounds, as *Okell* v. *Smith*, 1 Stark. 107 ; *Bluett* v. *Osborn*, 1 Stark. 384. There are qualifications of the general rule, as where, on sale of goods at sea, the buyer has no opportunity to examine them ; where a manufacturer furnishes an article for a specific use ; where modern authorities hold the liability is founded on express warranty, or the contract is executory. 1 Pars. Cont., 3d Ed., 470, note ; *Chanter* v. *Hopkins*, 4 M. & W. 399 ; *Bluett* v. *Osborn*, 1 Stark. 384 ; 1 Smith's L. C. 218, &c., before cited. Another exception is the sale of provisions for consumption.

We say the common law rule of express warranty, or fraud, is the law of this country. *Snell* v. *Moses*, 1 Johns. 96 ; *Defreeze* v. *Moses*, 1 Johns. 274 ; *Holden* v. *Dakin*, 4 Johns. 421, and note ; *Davis* v. *Meeker*, 5 Johns. 354 ; *Hunt* v. *Wright*, 17 Wend. 267 ; S. C. 18 Wend. 449, 463 ; *Hyatt* v. *Boyle*, 5 G. & J. 110 ; *Willings* v. *Consequa*, 1 Peters' C. C. 371 ; *Salsbury* v. *Stainer*, 19 Wend. 159 ; *Moses* v. *Mead*, 1 Den. 378 ; *Dean* v. *Morsan*, 4 Conn. 428 ; *Stevens* v. *Smith*, 21 Vt. 90 ; Arch. Civ. Pl. 24.

The doctrine of express warranty or fraud, except as to seller's title, is the doctrine of New-Hampshire. *Reed* v. *Prentiss*, 1 N. H. 174 ; where the court say, " a warranty, though implied as to title, does never, unless by express contract, exist as to quality ;" decided ten years after *Laing* v. *Fidgeon*.

Here the charge was, "that if a man, for full price, sell an article or an animal for a particular use, for which he knows it to be purchased, although nothing be said in relation to its merits, the law will imply a warranty that it is reasonably fit and suitable for the use for which he sells it." The rule is stated generally, not limited to the case of a manufacturer, nor to a specific use. To work on a farm is general. It includes all the uses to which oxen can be applied, substantially.

There is no state where the common law obtains, where this doctrine exists. The case of *Hyatt* v. *Boyle* decided the exact point raised upon the argument and the English cases cited. It is cited and approved by *Cowen*, J., in *Hart* v. *Wright*, 17 Wend. 267; and in same case, in 18 Wend. 463, *Tracy*, Sen., says, to imply a warranty that an article is fit for the use for which it was bought, would be to substitute the civil law rule for the common law. *Hanson* v. *Edgerly*, 29 N. H. 343, is opposed to this doctrine of implied warranty. In case for deceit in the sale of a horse, it was held that knowledge of a defect would not support an action against the seller, where the buyer had not equal means of knowledge; there must be a fraudulent concealment; representations contrary to his knowledge would be fraudulent. The horse was sold and bought for use in a livery-stable. If the law implied a warranty that he was fit for that use, a sale knowing he was not fit was a fraud.

We say no such rule of law exists, when applied to the facts of this case, as was given to the jury, if it exists in any case. This was the purchase of a specific yoke of oxen, which the plaintiffs had known before, and went purposely to buy, and measured and examined, and not a general order for the defendant to furnish a yoke of cattle to do a certain kind of work. See Pars. Cont. and Smith's L. C., before cited.

Deming *v.* Foster.

*Carpenter* and *H. Hibbard*, for the plaintiffs.

There was no variance. The plaintiffs' evidence, taken altogether, fully sustained their allegations. *Silver* v. *Kendrick*, 2 N. H. 160; *Knowles* v. *Dow*, 22 N. H. 387; *Wheeler* v. *Wheelock*, in Vermont — Law Rep., Nov., 1860, 435; where it was held that an allegation of an absolute representation that a horse was sound, was supported by evidence that the defendant represented the horse to be sound so far as he knew, and that he knew the horse to be unsound; and see *Howell* v. *Richards*, 11 East 633; *Tempest* v. *Rawlings*, 13 East 18; *Miles* v. *Sherwood*, 8 East 7; 1 Chit. Pl., 6th Ed., 332, 333, 334. But even if this were to be held a variance, yet, not being calculated to surprise or mislead the other party, it may be disregarded on trial, or cured by an amendment after verdict. The case of *East Boston Timber Company* v. *Persons*, 2 Hill 126, considered in connection with section 11, chapter 198, of the Compiled Statutes, upon the subject of amendments, seems to be conclusively in point. See, also, *Patten* v. *Hopkins*, 25 Wend. 117.

The question of variance was properly left to the jury upon the trial, and is settled by the verdict.

As to the admission of Bass' deposition, the court, being a court of general jurisdiction, has the power to appoint a commissioner in a case like the present, and to allow it to be used. This power is essential to the proper discharge of the duties of such courts, and necessarily incident to them independently of statutes, and is to be exercised, when necessary, to prevent a failure of justice. *Russell* v. *Fabyan*, 35 N. H. 157. Commissioners have been usually appointed in this state and elsewhere, to take the depositions of witnesses who are sick or out of the jurisdiction, as matter of right and power, not depending on consent. *Russell* v. *Fabyan*, 35 N. H. 162; 1 Greenl. Ev. 367, 368, 369, 373; *Jones* v. *Spring*, 7 Mass. 251. See *Emery* v. *Fellows*, 5 Mass. 219, 222. The ques-

Deming v. Foster.

tion was not one of power, but of discretion. That discretion having been exercised, and the question decided, it is not revisable here. *Gerrish* v. *Pike*, 36 N. H. 510. In *Russell* v. *Fabyan* the case was not decided, but reserved for the decision of this court. But if the question were open for revision, the facts appearing in the case show that it was a justifiable and proper exercise of the power of the court. The principal objection relates to the want of notice. The question whether the notice was reasonable or not was within the discretion of the court below, and, having been decided there, is not revisable here. *Gerrish* v. *Pike*, 36 N. H. 510, 518; *Kent* v. *Tyson*, 20 N. H. 121.

That depositions taken by virtue of the power of the court, as a tribunal of general jurisdiction, are governed, in respect to notice, by the discretion of the court at the trial, and that the provisions of the statute as to depositions are not applicable, see *Sergeant's Lessee* v. *Biddle*, 4 Wheat. 508; 4 Curt. 456.

The instructions of the court upon the amended count were correct. *Shepherd* v. *Pybus*, 3 M. & G. 869; 42 E. C. L. 452; *Smith* v. *Fairbanks*, 27 N. H. 521; *Gallaher* v. *Waring*, 9 Wend. 20, 27; *Thornton* v. *Thompson*, 4 Gratt. 121; *Benton* v. *Davis*, 8 Blackf. 317.

BELL, C. J. It is contended that as the oxen in this case were purchased by the plaintiffs, and sold by the defendant, expressly to do the work upon a farm, there is a warranty implied by the law that they were reasonably fit and suitable for that purpose, and the instructions to the jury assumed that principle as correct; but we think the legal rule intended to be relied upon falls far short of a case like this.

In the case of executory contracts for the making or furnishing goods or articles for a special use, the law implies a contract that the articles to be made or furnished

shall be reasonably fit and proper for the use for which they are ordered. Jones' Bail. 23, 90; Story's Bail., sec. 431; 2 Kent's Com. 588; Edw. Bail. 375.

And when articles thus agreed to be made or furnished are delivered, the law implies a warranty that the articles are reasonably fit and proper for that use. *Jones* v. *Bright,* 3 Bing. 533; *Laing* v. *Fidgeon,* 6 Taunt. 108; *Brown* v. *Edgington,* 2 M. & Gr. 279; *Shepherd* v. *Pybus,* 4 Scott's N. R. 434; *Howard* v. *Hoey,* 25 Wend. 351; *Wright* v. *Hart,* 18 Wend. 453; *Waring* v. *Mason,* 18 Wend. 432; *Bull* v. *Robinson,* 28 E. L. & E. 588; *Gardner* v. *Gray,* 5 Bing. 533; *Hibbert* v. *Shee,* 1 Camp. 113.

But there is no implied warranty as to the quality of an article sold, nor of its fitness for any particular use, where there is a present sale of a particular existing article, then open to the examination and inspection of the purchaser, and where he requires no express warranty.

To use the illustration of *Maule,* J., in *Keates* v. *Kadogan,* 2 E. L. & E. 320 and 10 C. B. 591, if a man says to another, "sell me a horse fit to carry me," and the other sells him a horse which he knows to be unfit to ride, he may be liable for the consequences; but if a man says, "sell me that grey horse to ride," and the other sells it, knowing he can not ride it, that would not make him liable. *Jones* v. *Bright,* 5 Bing. 535; *Gray* v. *Cox,* 1 B. & C. 108; *Bluett* v. *Osborn,* 1 Stark. 384; *Howard* v. *Hoey,* 23 Wend. 351; *Sands* v. *Taylor,* 5 Johns. 395; *Chanter* v. *Hopkins,* 1 Jur. 251 (N. Y. Ed.); 1 M. & W. 399, S. C.; *Swett* v. *Colgate,* 20 Johns. 196; *Welsh* v. *Carter,* 1 Wend. 186; *Burr* v. *Gibson,* 3 M. & W. 399; *Taylor* v. *Bullen,* 5 M. & W. 779; *Bierne* v. *Dorn,* 1 Seld. 98.

The case last stated by *Maule,* J., is the present case. The negotiation was not for a yoke of oxen to do work upon a farm. The purchase was of the particular oxen here in question, then under the observation of the parties, and though both parties understood that they were purchased

expressly to do the work upon a farm, yet, in such a case, the law implies no warranty as to their fitness for that use. The purchaser had opportunity to require an express warranty, if he thought proper. If, says Chancellor *Kent* (2 Com. 478), there is no express warranty by the seller and no fraud, the buyer, who examines the article himself, must abide by all losses from its defects, a rule which fitly applies to the case where the article was equally open to the inspection and examination of both parties, and the purchaser required no warranty of its quality. *Seixas* v. *Wood*, 2 Caines 48; *Welsh* v. *Carter*, 1 Wend. 185; *Chandelor* v. *Lopus*, Cro. Jac. 4; *Swett* v. *Colgate*, 20 Johns. 196; *Reed* v. *Prentiss*, 1 N. H. 176.

Where there is an express warranty of the quality of an article sold, in any respect, no further warranty will be implied by the law. Thus, if a man sell a horse, and warrant it sound, and the seller knows that it is intended to carry a lady, and the horse is sound, but is not fit to carry a lady, there is no breach of warranty. With respect to any other warranty beyond that expressed, the maxim is, *Expressum facit cessare tacitum*. *Maule*, J., in *Dickson* v. *Tizinia*, 2 E. L. & E. 514; *Parkinson* v. *Lee*, 2 East 314; *Budd* v. *Fairmanner*, 8 Bing. 52.

Here there was an express warranty as to the character and qualities of the oxen, alleged by the plaintiffs, and not denied by the defendant, the only question being whether the warranty was absolute in regard to holding back, as the plaintiffs alleged, or qualified as to one of the oxen, as the defendant contended. In such a case, there could be no warranty implied.

The declaration alleged a warranty that the oxen were all right, &c., and alleged as one of the breaches that the oxen would not hold back going down hill. It appeared from the plaintiffs' evidence, however, that in the course of the negotiation the defendant told the plaintiffs that the off ox needed watching going down hill. Objection

was made to this evidence as incompetent to sustain the declaration, on the ground of variance, the declaration alleging an unqualified warranty, and the evidence tending to prove a qualified warranty only. A motion was made for a nonsuit on the same ground.

As it is the province of the jury to weigh the testimony of witnesses, and determine its effect, we think it was competent for the court, in its discretion, to allow the evidence, and to refuse a nonsuit, leaving the jury to judge what was proved, and how it was to be understood, subject to proper instructions as to its legal effect..

As a plaintiff, who alleges as his cause of action the breach of an absolute and unqualified contract, can not recover upon proof of a conditional or qualified agreement, it must be the duty of the court, in submitting to the jury the evidence in such a case, to instruct them that if they find the contract proved to be materially variant from that alleged, the plaintiff's case is not supported.

On examining the charge, we find no instructions reported bearing on this point. It would seem the jury were not told whether the evidence that the defendant stated to the plaintiffs that the off ox needed watching in going down hill, was or not a material qualification of the general warranty, that the oxen were all right, &c. ; nor what would be its effect, if upon the evidence they found there was such a qualification.

The instruction actually given did not supply this defect, if it was in itself correct.

The jury were told that the position taken by the defendant, and which his evidence tended to prove, that he told the plaintiffs, at the time of the sale, substantially, what the peculiarities and defects of the oxen were, if they found it sustained upon all the evidence, was a complete and perfect answer to the claim of the plaintiffs, in both its forms, since, if the defendant told the plaintiffs, substantially, what the oxen were before they bought

them, he could have made no false warranty, either in express words or by implication of law.

It may well be doubted if the position is not too broadly stated, that if the defendant told the plaintiffs what the oxen were before they bought them, he could have made no false warranty in express words. Many things may be said in a protracted negotiation, either true or false, which are of no weight as to the contract finally made. If a party deliberately warrants an animal to be sound, when the trade is concluded, it is of no consequence what loose statements he may have made in the previous conversation, unless the court or the jury regard them as constituting qualifications of the final bargain.

The questions for the jury were, whether the defendant told the plaintiffs that the off ox needed watching going down hill, whether it was so told as to qualify the general statement that the cattle were good to hold back, or were all right, &c. And the instruction was defective in not informing the jury, whether, if they found those points in the affirmative, they constituted a variance which would defeat the plaintiffs' right to recover, because the contract proved, in a material respect, was not the same stated in his writ.

If a party desires an instruction of the court upon a particular point, or wishes the court to present certain views of the law, and the judge to give such views or instructions, the proper course is for the party to move the court to instruct as he desires; and if the court decline, he may then make the exception. He should not lie by until after the trial, and then take the exception, when it is too late to remedy the omission. *Moore* v. *Ross*, 11 N. H. 557.

The statute (Rev. Stat., ch. 188, sec. 15) requires a notice in writing, signed by a justice or notary, stating the day, hour and place of taking depositions, to be given

to the adverse party, or left at his usual place of abode, &c., a reasonable time before the taking.

The twenty-first general rule of court provides that no notice to the adverse party of the taking of depositions shall be deemed sufficient unless served three days, exclusive of the day of service and of the day of caption, before the day on which they are to be taken.

This court has all the powers of the highest judicial tribunals, and may rightfully exercise any powers belonging to the superior courts of law in England. Prov. Stat., 1771.

But no court here, or in England, ever claimed the power to dispense with or disregard any enactment of the legislature, passed in the due exercise of its constitutional powers. It was on this principle that the court felt bound to hold, in the case of *Cater* v. *McDaniel*, 21 N. H. 231, that a deposition, taken during the term of the court, and under its order, but without notice, was not competent evidence. And it must be taken as an invariable rule, that depositions can not be admitted as evidence without the notice required by the statute, unless such notice is expressly or impliedly waived by the adverse party.

Courts of justice have power, as a necessary incident to their general jurisdiction, to make such orders in relation to the cases pending before them, as are necessary to the progress of the cases and the dispatch of business. When the same rules come to be generally required in the cases as they arise, the courts have found it convenient, instead of special rules in each case, to establish general rules, applicable to all cases of the same class, and their power in this respect is recognized by statute.

The rules of the court, by which is intended the general rules, it is said, and perhaps not improperly, are the law of the court. But such rules have material differences from the statute laws. Like the statutes, they constitute the rules of decision and the test of right, as to every

Deming *v.* Foster.

thing done while they continue in force, and the rights of parties, as to every thing done under the rules in force, are determined by those rules. But as the court had originally the power to make special rules, as the exigencies of each case might require, and as such special rules might be modifications of former rules, even to the extent of their entire revocation; so the courts have still, notwithstanding their general rules, the power to make special rules in each case, though they may have the effect to exempt a particular case from the operation of the ordinary general rule.

In this respect the practice here is and always has been different from that adopted in Massachusetts (*Thompson* v. *Hatch*, 3 Pick. 512), where it was held that a plea in abatement can not be filed, after the first four days of the term, by any special order of the court. The court here have always extended the time of pleading in abatement, in cases where justice seemed to require it, and the application is made before the expiration of the four days, as, for example, where the writ is improperly withheld from the defendant.

The practice here seems consistent with the theory of the law, that the court may make such orders in each case, from time to time, as justice may require. A general rule, in its application to any particular case, being neither more nor less than a special rule to the same effect.

What shall be deemed reasonable notice, under the statute, of the taking of depositions, independent of the general rules, must, in each case, be determined upon consideration of the special circumstances. And it was to avoid the necessity of determining in advance for each case, what shall be such reasonable notice, or of deciding, after the taking, whether reasonable notice has been given, that the general rule, as to notice, has been adopted.

But this rule, like most general rules, must have exceptions, and the court have the power to determine in

Deming *v.* Foster.

advance, when such exceptions shall be admitted. They may thus decide what shall be, under special circumstances, reasonable notice. If, for instance, depositions are to be taken in California, or Oregon, and a party should apply to the court for an order that sixty or ninety days' notice should be necessary to the taking of such depositions, the court might properly make such order, and the depositions would be properly rejected, if the order was disregarded, though the general rule requires only twenty days' notice in any case.

If, however, depositions have been taken in conformity to the general rules, they would not be rejected, because the notice was too short, but the court would relieve the party by allowing time to take the evidence anew.

Upon the same principle, if a witness who was attending court, or who was expected to be present, should be taken sick, and application should be made to the court, it would be within their discretion to limit a very short notice, and the deposition taken under such order would be admitted.

It has been long since decided that depositions will be rejected, if it appear that the opposite party was notified to attend the taking of them at a time when he must necessarily be absent, or engaged in important business requiring his personal attention, and this known to the party giving the notice. And attorneys of the court are not to be notified to attend the taking of depositions, at a time when the court is sitting in the county where they reside, if the other party may be presumed to know that fact. *Ela* v. *Rand,* 4 N. H. 54. But even under such circumstances the court may, in its discretion and upon a proper case, direct in advance that a deposition should be taken, and that it may even be done pending the trial of the cause in which it is to be used, and upon such brief notice as the emergency may require.

We entertain no doubt of the power of the court to ap-

point a commissioner to take a deposition, or to order it to be taken during a term or pending a trial, without interrupting the trial, or to prescribe what shall be sufficient notice, however short; and, ordinarily, the whole court would not revise the orders of a judge, at the trial term in such a case, unless the question was expressly reserved by him for their consideration.

If this deposition had been taken upon notice, agreeably to the statute, given within any time prescribed by the court, we think it would have been competent; but as it was taken without any such notice, it must be held incompetent.

*Verdict set aside.*